employment, the defendant Austin S. Godwin, who was in an intoxicated condition, in an insulting, lascivious and horrible manner asked this plaintiff, 'Have you anything else good you wish to give away?'; that this plaintiff became highly insulted and offended by the improper remark of the defendant Austin S. Godwin but, nevertheless, she continued about her duties and ignored said remark, whereupon the defendant Austin S. Godwin repeated the remark and so that there should be no mistake in the insulting import of his words, he reached out and placed his hand upon the thigh or buttock of this plaintiff and pinched, or squeezed her in an insulting manner. That the act of the defendant Austin S. Godwin was an assault upon the person of this plaintiff, who is a respectable married woman living with her husband and five-year-old daughter. That when the defendant Austin S. Godwin insulted and assaulted this plaintiff as hereinbefore alleged, she became greatly embarrassed and mortified to such an extent that she lost control of her self-possession, and with an utter disregard of the consequences and without thought for her future employment with the defendant Steve Fasul, she then and there slapped the defendant Austin S. Godwin and left the vicinity of the booth occupied by said defendant." Plaintiff alleged damage.

In the court below the defendants demurred to the complaint. The court below overruled the demurrer and defendants assigned error and appealed to the Supreme Court.

*MacRae & MacRae for plaintiff.*
*H. C. Blackwell for defendants.*

PER CURIAM. As to Steve Fasul we think the demurrer should have been sustained. The facts alleged in the complaint as to him do not constitute a cause of action. As to Austin S. Godwin, the facts do constitute a cause of action.

Reversed as to Steve Fasul.

Affirmed as to Austin S. Godwin.

———

STATE v. LUCIEN EPPS AND MATTHEW EPPS.

(Filed 14 December, 1938.)

**Larceny § 7: Receiving Stolen Goods § 6—**

Circumstantial evidence of appealing defendants' guilt of larceny and receiving fertilizer of a certain brand *held* to raise only a strong suspicion of guilt, and was insufficient to be submitted to the jury.

19—214

APPEAL by defendants from *Sinclair, J.,* at April Term, 1938, of ROBESON. Reversed.

The defendants were indicted, with Neill Goins, for larceny and receiving of a number of bags of fertilizer, the property of J. B. Mc-Callum. All three were convicted of the offenses charged, and Lucien Epps and Matthew Epps appealed.

The evidence was to the effect that McCallum had bought about 800 bags of fertilizer, the larger part of which he had distributed to several farms. Eight bags of the fertilizer sent to a farm, on which a tenant named Jordan was manager, were missing. Fertilizer was also missed from another farm.

Jordan testified that the fertilizer was 4-7-5, and identified bags exhibited to him as being similar to those in which the fertilizer was packed. The bags had "cotton fertilizer" written on them and had the same brand. The fertilizer was kept under a shed, about thirty yards from the road.

On the morning of 1 May witness discovered eight sacks were gone. Officers tracked an automobile, from the imprint of its tires on the road, to the premises of Will Goins, a defendant, and found a car having tires similar to those making the imprints they had followed parked in Goins' yard, and it was identified as Goins' car.

At some point on the route there was evidence that the Goins car had stopped. There were marks from which witnesses inferred the load had been transferred, partly at least, to another car. An attempt to trace the tracks of another car as possibly the one to which the fertilizer was transferred failed.

About a week afterward a witness for the State went to the home of Matthew Epps, and saw Matthew putting out fertilizer. He had ten bags in the field. It was branded as made by the Maxton Oil & Fertilizer Company—"MOFCO"—and was 4-7-5 fertilizer. The fertilizer was being put on the farm of Lucien Epps by his son Matthew. Procuring a search warrant, witness later searched the premises, found one bag of MOFCO on the porch, with a small amount of fertilizer in it. In the loft of the house were found eight fertilizer bags that had been washed. These were exhibited in court, and were branded 4-7-5 MOFCO. Matthew said he got the fertilizer from his father, Lucien Epps. Lucien, in turn, stated that he got it from W. L. Biggs, at Johns Station; said he might have gotten some from McRae Company, at Maxton.

Biggs testified he sold fertilizer to Lucien Epps, but not of that brand.

J. G. Purcell, of the McRae Company, said his company gave orders to the Oil Company to supply its customers, but had given none for the defendants. He gave a list of these orders, in which the names of none of the defendants appear.

There was further evidence of a like nature in an apparent attempt to trace all the fertilizer sold under this brand, so as to exclude the possibility that defendants had come by the fertilizer in a legitimate way.

The defendants moved for judgment of nonsuit, which was denied. From the judgment upon the verdict, Lucien Epps and Matthew Epps appealed.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach for the State.*

*J. E. Carpenter for defendants, appellants.*

PER CURIAM. The evidence does no more than raise a strong suspicion of guilt as to appellants and is insufficient to go to the jury. The motion for nonsuit should have been allowed, and the judgment is

Reversed.

---

## STATE v. JAMES CRAYTON.

(Filed 14 December, 1938.)

**Automobiles § 31: Criminal Law § 56—Speed in excess of statutory maximum is merely prima facie evidence that speed is unlawful.**

A warrant charging merely that defendant operated his automobile at a designated speed in excess of the maximum prescribed by statute and the applicable municipal ordinance, charges no criminal offense, and defendant's motion in arrest of judgment should be allowed, since under the provisions of the statutes such speed constitutes merely *prima facie* evidence that the speed is unlawful. Public Laws of 1935, ch. 311, sec. 2 (a), (b), (g).

APPEAL by defendant from *Phillips, J.,* at August Criminal Term, 1938, of GUILFORD. Reversed.

The defendant was tried and convicted in the municipal court of the city of Greensboro under a warrant which charged that the defendant "within the corporate limits of the city of Greensboro, within one mile of the corporate limits of the city of Greensboro, did unlawfully, willfully operate an automobile on Church Street at a rate of 45 miles per hour, against the statute in such case made and provided, and against the peace and dignity of the State and in violation of city ordinance, section ........." From judgment pronounced thereon the defendant appealed to the Superior Court. On the trial below the jury returned a verdict of "guilty."