STATE OF NORTH CAROLINA v. LAWRENCE REDMAN BURTON AND JOSEPH SAMUEL MILLER.

(Filed 2 February, 1968.)

**1. Criminal Law § 106—**

Motion to nonsuit should be denied if there is substantial evidence tending to prove each essential element of the offense charged. This rule applies whether the evidence is direct or circumstantial, or a combination of both.

**2. Safecracking § 2—**

Evidence of the State tending to show that the safe of a corporation was forced open by a crowbar and other tools, that money was taken therefrom, and that three days later defendants were found in possession of burglary tools, including a crowbar which was identified by expert testimony as the one used to open the safe, *held* insufficient to be submitted to the jury on the issue of defendants' guilt of safecracking, since the evidence left the identity of the perpetrators a matter of speculation and conjecture.

APPEAL by defendants from *Braswell, J.,* 2 March 1967 Regular Criminal Session of WAKE.

Defendants were jointly indicted and tried for safecracking at the General Electric Supply Company on 17 January 1967. Both defendants pleaded not guilty.

Material portions of the evidence offered by witnesses for the State are as follows:

Henry James Clupper, operating manager of General Electric Supply Company, located at 18 Seaboard Avenue, Raleigh, N. C., testified that he had locked the doors and the safe and had secured the windows when he closed about 5:30 P.M. on 16 January 1967. When he returned to the business at about 6:15 the following morning he observed that the window at the front of the building had been broken and the locking device broken off. He found the door to the safe pried open and approximately $300 missing therefrom.

Detective Sgt. M. L. Stephenson of the Raleigh Police Department testified that he participated in the investigation of the break-in at the General Electric Supply Company. He observed that the inner part of the safe door was completely out and the outer flange portion of the door still intact. He identified State's Exhibit 1 as being the outer door to the General Electric Supply Company safe; State's Exhibits 2, 3, and 4 as being a crowbar, sledge hammer, and punch, respectively, turned over to him on 20 January 1967 by police officer C. C. Heath, and State's Exhibits 5 and 6 as being two 15-inch screwdrivers. State's Exhibit 1, the safe door, together with the crowbar, were sent to the Federal Bureau of Investigation crime laboratory.

Police officer Calvin C. Heath testified that he went to the Commercial Bonded Warehouse, located at 1525 South Blount Street,

Raleigh, N. C., about 2:30 A.M. on 20 January 1967 as instructed by the radio operator at the Raleigh Police Station. He observed that a slide door had been raised about ten inches. He also observed the defendants inside the building and inside a crater made of boxes. Burton had gloves on both hands, whereas Miller had a glove on his left hand only. Heath further observed a crowbar, sledgehammer, punch, screwdriver and a glove lying on the boxes and within a foot of the hole where defendants were found. He identified State's Exhibits 2 through 5 as being the tools which he observed in the Commercial Bonded Warehouse that night. Heath took into his possession the items marked for identification as State's Exhibits 2 through 6 and turned them over to Sgt. Stephenson on the morning of 20 January 1967.

K. H. Lehto, President of Commercial Bonded Warehouse, testified that he went to the warehouse between midnight and 4:00 A.M., 20 January 1967. A group of police officers were present when he arrived. Lehto stated that the tools marked as State's Exhibits 2 through 5 were not the property of the warehouse and that he had nothing similar to them in the warehouse.

The testimony of police officer C. A. Watson tended to corroborate the testimony given by officer Heath.

Robert A. Frazier, Special Agent of the F. B. I., assigned to the F. B. I. Laboratory in Washington, D. C., testified at length as to his qualifications and experience relative to the examination of tools for the purpose of determining whether a certain tool was used to make a certain tool mark. He then testified in detail as to how he arrived at the conclusion that the crowbar (State's Exhibit 2) was the particular tool used to make the pry bar marks appearing on State's Exhibits 1A, 1B and 1C, which were three pieces sawed out from the front panel of the door to the safe that was broken into at General Electric Supply Company on 17 January 1967.

All objections by defendants to the evidence relating to the 20 January 1967 incident were overruled.

At the conclusion of the State's evidence, both defendants moved for judgment as of nonsuit, which motions were denied. Neither defendant presented evidence in his own behalf. The jury returned a verdict against each defendant of guilty of safecracking as charged. Both defendants made motions to set aside the verdict and for a new trial. The motions were denied. Judgment was thereafter entered on the verdicts.

Defendants appealed.

*Attorney General Bruton and Staff Attorney Vanore for the State.*
*L. Bruce McDaniel and Garland B. Daniel for defendants.*

BRANCH, J. The principal question presented for decision is whether the possession by defendants, under the conditions stated, of the identical instrument used in the safecracking was sufficient to repel their motions for nonsuit.

Our research does not reveal a case in this jurisdiction where possession of tools used to effect a burglary or a safecracking was the sole evidence relied upon by the State.

There is ample evidence that someone "did, by the use of a crowbar and other tools force open a safe of General Electric Supply Company, 18 Seaboard Ave., Raleigh, N. C." on 17 January 1967, and that three days later defendants were found in possession of burglary tools, one being identified as that which was used to pry open the safe. All of the elements of the crime were clearly proven except the identity of the person or persons who committed the crime.

The State relies on circumstantial evidence to carry the case to the jury. The rule in respect to the sufficiency of circumstantial evidence to carry the case to the jury has been clearly stated by this Court in the case of *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431, where Higgins, J., speaking for the Court, stated:

> " '. . . If there be any evidence tending to prove the fact in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury.' The above is another way of saying there must be substantial evidence of all material elements of the offense to withstand the motion to dismiss. It is immaterial whether the substantial evidence is circumstantial or direct, or both. To hold that the court must grant a motion to dismiss unless, in the opinion of the court, the evidence excludes every reasonable hypothesis of innocence would in effect constitute the presiding judge the trier of the facts. Substantial evidence of guilt is required before the court can send the case to the jury. Proof of guilt beyond a reasonable doubt is required before the jury can convict. What is substantial evidence is a question of law for the court. What that evidence proves or fails to prove is a question of fact for the jury. *S. v. Simpson, ante*, 325; *S. v. Duncan, ante*, 374; *S. v. Simmons, supra; S. v. Grainger*, 238 N.C. 739, 78 S.E. 2d 769; *S. v. Fulk*, 232 N.C. 118, 59 S.E. 2d 617; *S. v. Frye*, 229 N.C. 581, 50 S.E. 2d 895; *S. v. Strickland,*

229 N.C. 201, 49 S.E. 2d 469; *S. v. Minton*, 228 N.C. 518, 46 S.E. 2d 296; *S. v. Coffey*, 228 N.C. 119, 44 S.E. 2d 886; *S. v. Harvey*, 228 N.C. 62, 44 S.E. 2d 472; *S. v. Ewing*, 227 N.C. 535, 42 S.E. 2d 676; *S. v. Stiwinter*, 211 N.C. 278, 189 S.E. 868; *S. v. Johnson, supra.*"

Although the rule is clearly stated and fully recognized, it is often, as here, difficult in its application.

In the case of *State v. Wooten*, 239 N.C. 117, 79 S.E. 2d 254, there was evidence tending to show that defendant's house and a church faced each other across a paved street, and non-taxpaid liquor was found in a field between the rear of the church and the paved highway. The Court held that the trial judge should have allowed defendant's motion for nonsuit, and stated:

"The testimony for the State is ample to show that some person violated the statutes relating to the possession of intoxicating liquor. It leaves to mere conjecture, however, the all-important question whether the culprit was the defendant or somebody else."

The Court considered whether the State's evidence was of sufficient probative force to warrant its submission to the jury in the case of *State v. Shu*, 218 N.C. 387, 11 S.E. 2d 155, where the State's evidence tended to show that at about 2:30 on the night of 24 April 1940 a cafe in Mooresville was broken and entered, goods stolen therefrom and a small safe thrown out nearby, unopened. Entrance was effected by breaking the glass of the front door. Blood was on the safe and on the cafe floor, apparently from someone cut by the broken glass. A witness testified that he saw an automobile in front of the cafe at 2:30 A.M. The automobile was registered in the name of defendant's father and was customarily driven by defendant. The witness saw two unidentified men leave the cafe, get in the automobile and drive away rapidly. The defendant lived with his father, two and a half miles from the cafe and had a service station about a mile and a half away, where the automobile was seen at 2:00 the same night. The next morning the automobile was found in the yard at the home of defendant's father. "There was blood in the automobile, *and also a piece of automobile spring, usable as a tire tool, which correspond to marks on the door of the cafe where it had apparently been used in effecting entrance.* (Emphasis ours.) There was no evidence that the defendant was seen at all on the night in question." When arrested the next day, defendant was thoroughly examined and no cut or scratch was found on him. The Court, holding that the motion for nonsuit should have been allowed, stated:

"This evidence tends to show that the automobile of Wade Shu, which the defendant habitually drove, was used by those who committed the offense charged in the bill of indictment, but it fails to connect the defendant personally with the crime. The fact of the unexplained use of the car by two unidentified persons affords no more than a suspicion or conjecture that defendant was present or actively participated in the offense.

"From *S. v. Goodson,* 107 N.C. 798, 12 S.E. 329, where the evidence was held insufficient to sustain a conviction for murder, we quote the apt language of Chief Justice Merrimon: 'Thus full summary of the incriminating facts, taken in the strongest view of them adverse to the prisoner, excite suspicion in the just mind that he is guilty, but such view is far from excluding the rational conclusion that some other unknown person may be the guilty party.' *S. v. Montague,* 195 N.C. 21, 141 S.E. 285; *S. v. Woodell,* 211 N.C. 635, 191 S.E. 334; *S. v. Madden,* 212 N.C. 56, 192 S.E. 859; *S. v. English,* 214 N.C. 564, 199 S.E. 920. 'It all comes to this, that there must be legal evidence of the fact in issue and not merely such as raises a suspicion or conjecture in regard to it.' *S. v. Prince,* 182 N.C. 788, 108 S.E. 330; *S. v. Patterson,* 78 N.C. 470; *S. v. Martin,* 191 N.C. 404, 132 S.E. 16; *S. v. Epps,* 214 N.C. 577, 200 S.E. 20; *S. v. Norggins,* 215 N.C. 220, 1 S.E. 2d 533.

"The motion for nonsuit should have been allowed, and the judgment is reversed."

In the instant case the State fails to place defendants at or near the scene of the crime on the date the crime was committed; fails to show any of the "fruits of the crime" in the possession of either defendant, and relies solely upon possession of a crowbar used by someone in the commission of the crime to show "substantial evidence of all material elements of the offense." True, the evidence is sufficient to put the instrument used at the scene of the crime, but whether one of the defendants, or both of the defendants, or either of the defendants was the person or persons who on or about 17 January 1967 "unlawfully and wilfully and feloniously did, by the use of a crowbar and other tools force open a safe of General Electric Supply Company, 18 Seaboard Ave., Raleigh, N. C., used for storing chattels, money and other valuables," remains in the realm of speculation and conjecture.

In the case of *State v. Harvey,* 228 N.C. 62, 44 S.E. 2d 472, Chief Justice Stacy spoke words which are apposite to the facts of the instant case. We quote:

"True it is, the evidence seems to point an accusing finger at the defendant as the perpetrator of the crime, and to excite suspicion, somewhat strongly perhaps, of his guilt, but it apparently leaves too much to surmise or assumption to support a conviction."

Taking all the State's evidence to be entirely true, the identity of the perpetrator or perpetrators of the crime remains a matter of speculation and conjecture.

Defendants' motions for judgment as of nonsuit, introduced at the close of the State's evidence, should have been allowed.

We deem it unnecessary to consider defendants' other assignments of error.

Reversed.