IN THE MATTER OF: BILLY WADE MASH

No. 8223DC844

(Filed 5 July 1983)

**Infants § 18— revocation of probation—insufficiency of evidence**
    The trial court erred in finding respondent participated in breaking, entering and damaging a building and in damaging chickens, and in finding that respondent had violated the conditions of his probation where the evidence was insufficient to establish that respondent committed any of the offenses for which he was tried.

APPEAL by respondent from *Ferree, Judge.* Judgment entered 18 June 1982 in District Court, WILKES County. Heard in the Court of Appeals 11 February 1983.

Before the incidents involved in this appeal occurred, Billy Wade Mash, a juvenile, was adjudicated a delinquent upon findings that he had stolen a motorcycle and wrongfully damaged it and some fourteen different mailboxes. His commitment for a term not to exceed his eighteenth birthday was suspended and he was placed on probation for one year upon the condition, among

others, that he not violate any state or federal criminal law. A few days thereafter, by three different petitions, the respondent was charged with violating several other criminal statutes and the terms of his probation. The first petition charged him with breaking and entering a chicken house belonging to Ernest Pierce and wantonly and wilfully damaging the chicken house and Pierce's chickens; the second charged that he violated probation by breaking and entering the chicken house of Jack Pierce and wantonly and wilfully damaging his chickens and house; the third charged him with wantonly and wilfully damaging mailboxes belonging to John McNeil, Bud Huffman, Kyle Huffman, Odell Church and Allen Staley. The breakings and entries were alleged to violate G.S. 14-54, damaging the chicken houses and mailboxes G.S. 14-127, damaging the chickens G.S. 14-160.

Respondent pleaded not guilty to all charges and at trial only two witnesses testified. Deputy Sheriff Shumate, who investigated the charges, testified that:

The majority of the damage it actually was in a pretty wide area in Millers Creek area, most of it occurred on some side roads such as Fish Dam Creek Road off of Old 421 West and some of the chicken houses were off near West High there and also there was a chicken house and some mailboxes damaged up 16 North.

He went to the various places referred to in the petitions and observed the damage alleged; Ernest Pierce's chicken house screen door had been torn and approximately fifteen of his chickens decapitated; there was blood on the chicken house floor, but it was dried and he couldn't determine whether it was fresh or not; some of the mailboxes belonging to those named in the petition had been dented by beating on them with something and some had been pulled up; he interviewed the respondent, who signed the following written statement:

David Mash and I met Jason Wolfe at Millers Creek at the Discount House on Highway 421. Jason asked us to go riding around and we got in the car with him. It was his sister's green Pinto. After riding around for sometime, we stopped at Holbrook's Motel and Jason bought two six packs of beer and drove some more and Jason drank some beer. We went past West High School towards Millers Creek and

turned left and drove to some chicken houses and Jason got out and went into the chicken house. When he came out, he had a chicken which he threw down and got in the car and drove up 16 North and he went into another chicken house and Jason was cutting chicken's heads off and I picked one up and threw it. Later we pulled up some signs and damaged some mailboxes.

At the end of the officer's direct examination, the Court questioned him as follows:

THE COURT: A couple of questions, Mr. Shumate. In conversing with Billy Wade Mash, did the names of Ernest Eller, Ernest Pierce, John McNeil, Bud Huffman, Kyle Huffman, Odell Church, Allen Staley or Jack Pierce come up?

A. No, sir. In fact, Billy did not even know the name of the roads they were on, but he did admit to being involved in this, but as I said he didn't know whose mailboxes they were and through the investigation or through talking to the other boys that were picked up, we came to the conclusion . . .

THE COURT: All right. Based on his statements that relate to his action to these particular names that I've just now called. That's by virtue of his telling you which road they turned off of and which road they were riding on.

A. No, sir. As I said, about the only way he could describe it, he said he turned off on to some dirt roads and the only statement to the mailboxes as I said or read in his statement he said *later we pulled up some signs and damaged some mailboxes.* That's the extent of his statement about the mailboxes.

Jack Pierce testified that: a four-foot screen on the door to his chicken house was torn off, enabling 100 to 150 chickens to go outside, and ten to twelve chickens were lying there dead, but he did not know whether they were killed "or whether they died."

From the evidence the Court found that respondent participated in breaking, entering and damaging buildings owned by Ernest Pierce and Jack Pierce and in damaging their chickens, and entered an order committing him to the Division of Youth Services, Department of Human Resouces. No findings were made

one way or the other as to damaging the mailboxes and no dispo-
sition was made of those charges.

*Attorney General Edmisten, by Special Deputy Attorney
General Jo Anne Sanford, for the State.*

*Gregory & Joyce, by Edgar B. Gregory, for the respondent
appellant.*

PHILLIPS, Judge.

The only question requiring our determination is whether the
evidence presented against the respondent juvenile was sufficient
to prove that he committed the offenses for which he was tried.
In resolving the question, we have been guided by the legal prin-
ciples stated below, all of which are familiar to the profession and
basic to our system of jurisprudence.

While charges against juveniles are not processed the same
way criminal charges against adults are, the constitutional and
legal requirements for proving them are the same. *In re Winship,*
397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed. 2d 368 (1970). The first step
in convicting one of crime in this country is to prove that the
crime charged has been committed by somebody—the second that
the defendant committed it—and the failure to prove the first
proposition is no less fatal to the prosecution than failing to prove
the second. *State v. Chapman,* 293 N.C. 585, 238 S.E. 2d 784
(1977); 23 C.J.S., Criminal Law § 916(1) (1961); 1 Wharton's
Criminal Law § 28 (14th ed. 1978). The State had the burden to
prove respondent's guilt beyond a reasonable doubt by substan-
tial evidence covering all material elements of the offenses
charged. *Matter of Meaut,* 51 N.C. App. 153, 275 S.E. 2d 200
(1981); *In re Vinson,* 298 N.C. 640, 260 S.E. 2d 591 (1979). If the
respondent's conviction was not based on evidence, but was ar-
rived at by mere surmise and speculation, it cannot stand. *State
v. Burton,* 272 N.C. 687, 158 S.E. 2d 883 (1967).

Though the evidence shows plainly enough that on the night
involved the respondent engaged in considerable activity of a
criminal nature, and there is some indication in the record that
other evidence could have been introduced against him, the
evidence that was introduced, which is all that we can consider
and rest our decision upon, is not sufficient, in our judgment, to

establish that respondent committed any of the offenses that he was tried for. Therefore, the judgment appealed from is vacated and upon return of the matter to the District Court, judgments of acquittal will be entered in all three cases.

First of all, except for Jack Pierce's testimony showing that his chicken house had been broken into and damaged, the evidence failed to establish that any of the many crimes alleged had been committed. The demise of Jack Pierce's chickens was not shown to be due to any criminal act by anybody, since the only evidence relating thereto was his testimony that he did not know whether they were killed or just died. None of the other alleged property owners testified, nor did anyone else who *knew* that the properties had been violated or damaged by someone other than the owners, and without their consent. The officer's testimony that he saw the damaged properties did not establish that the crimes had been committed, but only what their results were. The absence of such evidence in these cases was as fatal as the State's failure to show that accident was not the cause in a burning case. *State v. Brown*, 308 N.C. 181, 301 S.E. 2d 89 (1983). In that case, it should be noted, the State had a full confession, whereas here there was only the beginning of one.

Secondly, since the trial judge made no finding that respondent damaged any of the mailboxes referred to in the third petition, that was tantamount to a finding of not guilty as to those charges, and a judgment of acquittal would have to be entered as to them, in any event.

Thirdly, though the recorded evidence does establish that on the night involved the respondent visited two chicken houses that were vandalized by his companion, and the evidence supports the inference that he aided and abetted whatever crimes were committed there, it is, nevertheless, insufficient to show that either of those places belonged to either Ernest Pierce or Jack Pierce, the property owners designated in the other two petitions. Proving that respondent broke into two chicken houses was not enough on this point—what the State had to prove was that he broke into the chicken houses of Ernest and Jack Pierce, and that was not done.

According to the investigating officer's testimony, several chicken houses scattered over a "wide area" of Wilkes County

were vandalized that night; yet the respondent's statement, read into evidence and apparently relied upon as a confession, refers to only two such places and does not identify either, even indirectly. Earlier in his testimony, by affirmatively answering a question put to him by the District Attorney, the officer seemingly filled this gap by saying that he had determined in his discussion with Billy Wade Mash that the property that he had investigated and observed the damage on was the same property as related to him by Billy Wade Mash. But that was not evidence, it was surmise, as the officer's answers to the questions asked him by the Court make plain, his testimony, without qualification or later contradiction, being that respondent could not identify or locate any of the places that he went to, or even the roads that they were situated on. Thus, the officer's "determination" that the chicken places that Mash went to were the same ones that he investigated is devoid of legal effect. If the State had evidence that the places were the same, it was not presented. From the evidence that was presented, it is just as likely that the two chicken houses that respondent went to belonged to two other people in that wide area involved, whose places were damaged that night, as that they belonged to either Ernest Pierce or Jack Pierce.

Though the respondent may deserve punishment for the pointless and wanton destruction of the property of others, as there are few crimes that are less excusable, under the legal principles that govern his case, he is nevertheless entitled to be acquitted of all charges, and it is so ordered.

Reversed and remanded.

Judges WEBB and BECTON concur.