### STATE v. WILLIE FIKES.

#### (Filed 20 June, 1967.)

**1. Criminal Law § 100—**

Failure of defendant to renew his motion for judgment of compulsory nonsuit at the close of all the evidence waives his motion made at the close of the State's evidence, and the sufficiency of the evidence is not presented on appeal. G.S. 15-173.

**2. Criminal Law § 50—**

A witness' testimony to the effect that he thought the pistol, identified as the one used in the perpetration of the offense, was the one taken from his home, but that he could not positively identify it, is competent, the witness' lack of positive identification affecting the weight of his testimony but not its admissibility.

**3. Burglary and Unlawful Breakings §§ 2, 4— Evidence held sufficient to support verdict of nonburglarious entry.**

Evidence tending to show that defendant, apprehended in a home at night by the owner of the home, fired two shots from a pistol and fled, that a pistol which had been in a closet of the house was missing after the incident, that defendant later sold a pistol to another, which pistol looked like the one taken from the house, together with expert ballistics testimony that at least one of the spent bullets in the house was fired from the pistol which defendant later sold, *held* sufficient to sustain a verdict of guilty of felonious entry otherwise than burglariously with intent to commit larceny, notwithstanding the absence of evidence of any breaking, since under the statute it is unlawful to enter a dwelling with intent to commit a felony therein either with or without a breaking. G.S. 14-54.

**4. Criminal Law § 97—**

The record in this case *held* not to support defendant's contention that the solicitor commented in his argument upon defendant's failure to testify.

**5. Criminal Law § 118—**

The jury's verdict of guilty of feloniously entering the dwelling of a named person *held* sufficient to support judgment for felonious entry into the dwelling otherwise than burglariously with intent to commit larceny, the verdict being interpreted in the light of the indictment, the evidence, and the charge of the court.

APPEAL by defendant from *Hobgood, J.,* December 1966 Regular Criminal Session of ORANGE.

Criminal prosecution upon an indictment charging defendant about 11:50 p.m. on 21 April 1966 with feloniously committing the felony of burglary in the first degree.

Defendant, who was represented by his court-appointed counsel, James R. Farlow, because he was an indigent, entered a plea of not

guilty. Verdict: "Guilty of felonious entering the dwelling of Lyman Cotton."

From a judgment of imprisonment, defendant appealed to the Supreme Court.

*Attorney General T. W. Bruton and Deputy Attorney General James F. Bullock for the State.*

*James R. Farlow for defendant appellant.*

PER CURIAM. When the State had completed its evidence, defendant moved for a judgment of compulsory nonsuit. The court ruled that it would not submit the case to the jury on the charge of burglary in the first degree, but would submit to the jury the charge of a felonious entering into a house otherwise than burglariously with intent to commit larceny, a violation of G.S. 14-54, which is a less degree of the felony of burglary in the first degree as charged in the indictment. G.S. 15-170. The court overruled the motion and defendant excepted.

Defendant then offered the testimony of his mother in his own behalf.

Defendant did not renew at the close of all the evidence his motion for judgment of compulsory nonsuit.

The failure of defendant to renew his motion for judgment of compulsory nonsuit at the close of all the evidence constituted a waiver of his right to insist upon his first motion, and is not subject to review in this Court. G.S. 15-173; *S. v. Howell,* 261 N.C. 657, 135 S.E. 2d 625, and cases therein cited.

Although defendant has waived his right to insist upon a review of the State's evidence by this Court to determine whether it is sufficient to carry the case to the jury, we have decided to set it forth.

The State's evidence, considered in the light most favorable to it, tends to show the following facts: Lyman Cotton lives in Chapel Hill, and is a teacher of English at the University of North Carolina. He went to bed in his house about 11 p.m. on 21 April 1966. He was alone in his bedroom. The room had twin beds in it. The only light in his bedroom was between the twin beds. He awakened about midnight, and decided he would go downstairs and drink a glass of milk. He got out of bed on the floor between the twin beds. He saw something that looked like a stuffed duffle bag sticking out from under his bed. He reached down and touched it, it was warm and moist, and he knew it was the back of a man. He saw only the back of the person under his bed, and he could not tell whether this person was white or a Negro. As he stepped out into a very small

upstairs hall, a shot rang out and a light in his bedroom went off. Immediately following, two more shots were fired, one of which shattered the hanging light in the hall. He went downstairs as rapidly as possible, went out the back door, around to the front of his house, across the street, and asked them to call the police. The police came quickly. When he went to bed, two of his shoes were at the foot of his dresser in his bedroom. When he first found the shoes, after the shots were fired, one of them had a lead slug in the heel. He gave that shoe, which is marked State's Exhibit No. 1, to Detective Sergeant Pendergraft of the Chapel Hill police force with the slug still in it. He examined the pistol, marked for identification as State's Exhibit No. 2. He could not absolutely identify it as his pistol, but it looked like his pistol, which is a Smith and Wesson. He could not be altogether certain that it is his pistol, because he had not seen it in some weeks. He kept his pistol in the closet of his bedroom. After the shooting that night, the pistol was not there.

Lindbergh Taylor lives in Durham, North Carolina. He has known defendant five years and saw him at Mason's Motel in Chapel Hill, North Carolina, on 21 April 1966. He (Taylor) had gone to Mason's Motel to get his brother-in-law's clothes as he was checking out of the motel. His brother-in-law, Jesse Wright, and a bunch of boys were there at the time. Defendant wanted to ride back to Durham with them. In Durham he told defendant where he could get a room. Defendant said he wanted him to keep a .38 caliber pistol for him. State's Exhibit No. 2 was handed to Taylor, and he answered upon inquiry, "It was a pistol like this one." He took the pistol and kept it for a while. Later, defendant wanted to borrow some money from him. He had no money, but agreed to try to pawn the pistol for him. Defendant told him he went to a doctor's house in Chapel Hill, and shot at him with the gun. Jesse Wright and Peggy Mitchell were present when defendant made this statement. Peggy Mitchell has a newborn child and could not come to court. Defendant told Peggy to take the pistol. After defendant told about shooting somebody with it, he told him the best thing to do was to throw it away. The pistol had two bullets in it, and Peggy took the two bullets out and threw them away. Defendant got mad at Peggy for doing this and took the pistol back.

Charles Thompson testified to this effect: He lives in Durham. He has seen defendant play pool two or three times in the poolroom he runs. On a date he does not recall, defendant and two boys came in his poolroom. Defendant gave him a .38 caliber pistol. He later carried the pistol home and put it in his trunk, where it stayed until the officers came for it. He went home, got the pistol out, and gave

it to the officers. The pistol was a .38 caliber pistol, and if the State's Exhibit No. 2 is not it, it is just like the pistol defendant gave him. He gave defendant $10 for the pistol. He saw defendant some three or four weeks later in the poolroom one morning, and defendant asked him if he still had the pistol and if he still wanted to keep it. He replied, yes, he wanted to keep it.

Howard Pendergraft testified in substance: He is a detective sergeant on the police force of the town of Chapel Hill. Late on the evening of 21 April 1966 or early the next morning, he went to the home of Lyman Cotton. He made an investigation around his dwelling house, and found two bullets. One was recovered from the molding around the hall at the head of the steps outside Mr. Cotton's bedroom. This bullet is State's Exhibit No. 3. The other bullet, which is marked State's Exhibit No. 4, was in the heel of a black loafer shoe Mr. Cotton gave to him. He turned over to John Boyd of the State Bureau of Investigation the two bullets, a .38 caliber Smith and Wesson pistol, and a black loafer shoe which had the slug in its heel. He had got the pistol from Charles Thompson at his poolroom in Durham. The pistol was kept by and under the control of the Chapel Hill police department until it was turned over to the State Bureau of Investigation's laboratory for examination. He talked with defendant, and defendant denied any knowledge of this pistol.

Lindbergh Taylor, recalled as a State's witness, testified in substance: He visited defendant in jail at Chapel Hill. He had a conversation with defendant about the pistol, and defendant told him he had pawned it to a boy called "Buck Shot" in a poolroom in Haiti. He does not know "Buck Shot's" real name, but he is the boy who was on the witness stand a while ago by the name of Charles Thompson.

John Boyd is a special agent with the State Bureau of Investigation in charge of the firearms section of the crime laboratory, and has been so employed for nearly fifteen years. He has had training and experience. The court ruled that he was an expert in the field of firearms and ballistics. To this ruling there was no exception. He testified in substance: He examined the pistol, State's Exhibit No. 2, and the bullets marked State's Exhibits Nos. 3 and 4. These exhibits were given to him by Detective Sergeant Pendergraft of the Chapel Hill police department on 25 April 1966. State's Exhibit No. 3 was fired from the pistol, State's Exhibit No. 2. State's Exhibit No. 4 (the bullet from the heel of the shoe of Mr. Cotton) was fired from a weapon of this exact type, kind and description. His opinion that State's Exhibit No. 3 was fired from the pistol, State's Exhibit No. 2, was based on a microscopic comparison under a variable

magnification of two to twenty-two diameters. State's Exhibit No. 3 is a lead alloy. He fired the same type and kind of bullet. The markings from the pistol will be the same for any projectile fired through it so long as the metallic composition thereof is softer than the alloy steel barrel of the gun fired. He does not purport to say the bullet from the heel of the shoe of Mr. Cotton was fired from State's Exhibit No. 2, the pistol.

Charles Thompson, recalled as a witness by the State, testified in substance: He took the pistol from a boy named Robert, Junior, and gave him $10 for it. Defendant told him to keep the pistol until Friday. Defendant was with Robert, Junior. Robert, Junior, had the gun. He has never seen defendant with the gun. Defendant told him it was his gun when he gave the money to Robert, Junior.

Defendant offered the testimony of his mother, Gladys Fikes, who testified in substance: Defendant is her son. He was 20 years of age on 21 April 1966. The police came to her home about 12 o'clock at night. Her son went to Mason's Motel about 11:30 p.m., and she saw him no more that night. She works for Mr. Lyman Cotton, and has been working for him over eleven years, and still works for him. She remembers it was the night of 21 April 1966 when the police came to her house because she marked it on her calendar.

Defendant assigns as error that Lyman Cotton was permitted to testify over his objection and exception as follows: "I cannot absolutely identify it as my pistol, but it looks exactly like mine. Mine was a Smith and Wesson. . . . I cannot be altogether certain because 1 had not seen the pistol in some weeks. . . . It (the pistol) was kept in the closet of my bedroom." He was then asked the question: "After the events described, was the pistol in the closet of your bedroom?" He replied, over defendant's objection and exception: "No, it was not in the closet. I heard two (2) shots fired."

The State's evidence tends to show that the bullet taken from the molding around the hall at the head of the steps outside Lyman Cotton's bedroom was fired from the pistol defendant gave to Charles Thompson. This pistol was taken by Howard Pendergraft, a detective sergeant of the town of Chapel Hill, from Charles Thompson at his poolroom in Durham, and kept under his control until he turned it over to the SBI laboratory in Raleigh. It was not necessary that Lyman Cotton should positively identify this pistol. His lack of positive identification affects the weight of his testimony rather than its admissibility. This assignment of error is overruled. 2 Wharton's Criminal Evidence, 12th Ed., by Anderson, § 675.

Defendant assigns as error that the court permitted the State, over his objection and exception, to introduce in evidence the pistol

and the bullet in the heel of the shoe. This assignment of error is overruled. *S. v. Macklin,* 210 N.C. 496, 187 S.E. 785.

The jury could reasonably find from the evidence that defendant entered Lyman Cotton's house with intent to commit larceny. "Non-burglarious breaking or entering is a statutory offense. (G.S. 14-54). Under the statute it is unlawful to enter a dwelling with intent to commit a felony therein, either with or without a breaking. Therefore, while evidence of a breaking is competent, it is not required." 1 Strong's N. C. Index, Burglary and Unlawful Breakings, § 2. Upon authority of *S. v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431, it is clear that the State's evidence adduced in the trial below, considered in the light most favorable to it, was sufficient to carry the case to the jury on the charge of a felonious entry otherwise than burglariously into the home of Lyman Cotton with intent to commit larceny, and to support the verdict.

Defendant assigns as error this part of the speech of the solicitor for the State: "That you (the jury) have not been allowed to hear all the truth of this case, and they (you) might wonder why." We have in the record before us only this one sentence of the solicitor's argument to the jury. It is difficult, if not impossible, to ascertain from this one sentence what the solicitor meant. We can only conjecture as to what he meant. It seems clear that this one sentence was not a reference to the defendant's failure to testify in his own behalf. We do not approve of this argument by the solicitor, but in our opinion it does not justify disturbing the verdict and judgment below. This assignment of error is overruled.

The other assignments of error have been carefully examined and all are overruled. There are no assignments of error to the charge.

The court instructed the jury that it could return one of three verdicts as they found the facts to be from the evidence and the charge of the court: (1) Guilty of a felonious entry into a house otherwise than burglariously with intent to commit larceny, or (2) guilty of unlawfully entering the house of Lyman Cotton without an intent to commit larceny or other infamous crime therein, or (3) not guilty. *S. v. Chambers,* 218 N.C. 442, 11 S.E. 2d 280; *S. v. Johnson,* 218 N.C. 604, 12 S.E. 2d 278. Interpreting the verdict in the light of the indictment, the evidence, and the charge of the court, it is sufficient to support the judgment. 1 Strong's N. C. Index, Criminal Law, § 118.

In the trial below we find

No error.