STATE OF NORTH CAROLINA v. DOUGLAS ARTHUR LYLES AND DAVID JONATHAN ROSE

No. 68

(Filed 4 September 1979)

1. **Burglary and Unlawful Breakings § 5; Larceny § 7— burglary of motel room— larceny of items—sufficiency of evidence**

   There was sufficient evidence for the charges of first degree burglary and felonious larceny against one defendant to go to the jury where such evidence

tended to show that defendant was seen around 2:30 a.m. "fumbling" with the door knob of the office at a motel; when he discovered he had been seen, he turned and ran away; *within one hour after he was first seen*, it was discovered that doors to two of the rooms at the motel were standing ajar and, subsequently, that one of them had been burglarized; at about 6:15 a.m. defendant was seen again leaving the motel in his codefendant's car; when the person who saw defendant then looked back at the car, defendant was down out of sight; a later search of the car uncovered a motel master key behind the kick panel on the passenger side; when tested, the key opened the door of the room that had been burglarized; that door showed no signs of forced entry; and *the occupant of the room testified that he had locked it before going to bed.*

2. **Burglary and Unlawful Breakings § 5; Larceny § 7— burglary of motel room — insufficiency of evidence**

Evidence against one defendant in a first degree burglary and felonious larceny case was insufficient to be submitted to the jury where it tended to show only that defendant was seen with his codefendant near the scene of the crime *some three hours after the crime was discovered*, and a master key to the motel which was burglarized was found in defendant's car on the passenger side where the codefendant had been riding, but there was no evidence that defendant was at the crime scene so as to use the key.

3. **Criminal Law § 92.1— two defendants charged with same crimes—consolidation proper**

The trial court did not err in consolidating for trial charges of first degree burglary and felonious larceny against two defendants, and there was no merit to one defendant's argument that he was prejudiced because, if the trials had not been consolidated, a master key to the motel burglarized found in the other defendant's car would not have been admissible against him.

4. **Criminal Law § 96— evidence stricken—no instruction to disregard—no error**

The trial court did not commit prejudicial error in failing to instruct the jury to disregard a witness's answer immediately after allowing a motion to strike.

5. **Criminal Law §§ 89.2, 96— testimony not corroborative—failure to strike—no prejudice**

Even if the trial court erred in failing to order certain testimony offered for corroboration stricken once it became apparent that the witness who was to be corroborated thereby would not testify, defendant was not prejudiced since such "corroborative" testimony added nothing to the State's case.

6. **Searches and Seizures § 15— search of vehicle—standing of one other than owner to object**

Defendant had no standing to object to a search of the codefendant's car and to seizure of items therefrom.

State v. Lyles

7. **Criminal Law § 122— additional jury instructions after retirement—request by State—no error**

The trial court did not err in bringing the jury back into the courtroom fifteen minutes after they retired, informing them that the State had requested an instruction on acting in concert, and then giving such instruction, since the court clearly conveyed to the jury their duty to give equal weight to all the court's instructions.

Justice BROCK took no part in the consideration or decision of this case.

Justice HUSKINS dissenting as to defendant Lyles.

Justice CARLTON joins in the dissenting opinion.

BEFORE *Judge Donald L. Smith* at the 16 May 1977 Session of HALIFAX Superior Court and on bills of indictment proper in form defendants were tried and convicted of first degree burglary and felonious larceny. Each defendant was sentenced to imprisonment for life on the burglary conviction and imprisonment for ten years on the larceny conviction to run concurrently with the life sentence. Defendants appeal pursuant to G.S. 7A-27(a). We permitted initial review of the larceny conviction pursuant to G.S. 7A-31(a). The case was docketed and argued as No. 5 at the Spring Term 1978.

*Rufus L. Edmisten, Attorney General, by Elizabeth C. Bunting, Assistant Attorney General, for the State.*

*W. Lunsford Crew, Attorney for defendant appellants.*

EXUM, Justice.

Defendants' principal assignment of error challenges the trial court's denial of their motion to dismiss at the close of the state's evidence. We hold that the evidence was sufficient to go to the jury as to defendant Rose but not as to defendant Lyles. With regard to the remaining points raised, we hold: (1) there was no error in the consolidation of the trials of the two defendants; (2) the trial court did not err to defendant Rose's prejudice in its rulings on the evidence; (3) defendant Rose had no standing to object to a search of defendant Lyles' car; and (4) the trial court did not err in giving the jury additional instructions requested by the state.

The state's evidence showed that E. L. Johnson was working as a night auditor at the Howard Johnson's Motel in Roanoke Rapids on the morning of 24 February 1977. Around 2:30 a.m. he heard someone fumbling with the knob of the door outside his office. Thinking it was a guest seeking admission, Johnson went over, pulled back a curtain, and motioned for the man to come to the front door. When the man saw Johnson he whirled and ran away. Johnson identified the man he saw as defendant Rose.

Johnson then called the police. Officers Whitton and Bobbitt arrived within four to five minutes after his call. Johnson described the man he had seen to them. Upon searching the area they did not find the man he described, but they did find the doors to two motel rooms ajar. Room 206 turned out to be unoccupied. Room 204 was occupied by Mr. Cecil Coletrain. After some difficulty, the officers managed to awaken him about 4:00 a.m. Coletrain was missing $140.00, which he had laid on a table in the room before going to bed. He had locked his door before retiring. He did not know either defendant and had not given either of them permission to enter his room.

Officer Whitton stated that there were no physical signs of forced entry on the door to Coletrain's room. He also testified: "I drove through the motel lot two more times that night and made a visual check of the premises. We looked at each individual car on the lot. We found some to be locked and some to be unlocked, but none appeared to have been tampered with. I know that Douglas [Lyles] drives a 1967 Chevrolet Malibu station wagon. I did not see that automobile during the periodic checks that I made throughout the night."

About 5:30 a.m. Johnson called Mr. Al Matta, manager of the motel. Johnson told Matta about the break-in and described the man he had seen. Matta came to the motel about 6:15 a.m. and walked around it. He saw a car parked in the laundry room area where usually none were parked. He started toward the office to see if the car was registered and was interrupted by a guest seeking directions. When he returned to look at the car he came within ten feet of it and saw two men sitting inside. He recognized the passenger as looking like the man Johnson had described to him. Matta apparently looked away and when he looked back the passenger was down in the front seat out of sight. The

car then backed out and started away. Matta identified the driver
as defendant Lyles and the passenger as defendant Rose.

Mr. G. C. Southerland was also a guest at the motel, staying
in Room 413. He discovered shortly after he awoke around 7:00
a.m. on 24 February 1977 that he was missing a watch, some
jewelry and $75.00 to $80.00. He then noticed his door was slight-
ly ajar. He did not otherwise notice the condition of the door.
Southerland stated he had closed and locked the door before go-
ing to bed. He did not know either Lyles or Rose and had not
given them permission to enter his room.

Danny Rogers, a Roanoke Rapids police officer, found a car
fitting the description of the one seen by Matta around noon on
24 February 1977. The car was parked at Walser Motor Company
where defendant Lyles worked. It was registered to him. Matta
identified it as the car he had seen. At approximately 3:30 p.m.
the police searched the car and found, among other things, a
bedspread and a key. The bedspread was similar in color, design
and shape to those used at Howard Johnson's, but it was not
positively identified as being from there.

The key was behind a "kick panel" on the passenger side of
the car. Matta identified it as a motel master key. It was tried on
the doors of the rooms broken into, and it opened them.

Defendants offered no evidence. At the close of the state's
evidence, they made a motion to dismiss for insufficiency of the
evidence to sustain a conviction. This motion was allowed as to
the charges arising out of the alleged Southerland burglary and
theft and denied as to the charges arising out of the alleged Cole-
train burglary and theft.

We deal at the outset with defendants' contention that their
motions to dismiss should have been allowed as to all the charges.
Defendants concede there was sufficient evidence to establish the
commission of the crimes charged. They argue, however, that the
evidence was insufficient to identify them as the perpetrators.

The case against these defendants consists of circumstantial
evidence. The test of the sufficiency of the evidence to go to the
jury in such a case was stated by Justice Higgins in *State v.
Stephens*, 244 N.C. 380, 383-84, 93 S.E. 2d 431, 433-34 (1956):

"Taking the evidence in the light most favorable to the State, if the record . . . discloses substantial evidence of all material elements constituting the offense for which the accused was tried, then this court must affirm the trial court's ruling on the motion. The rule for this and for the trial court is the same whether the evidence is circumstantial or direct, or a combination of both.

"We are advertent to the intimation in some of the decisions involving circumstantial evidence that to withstand a motion for nonsuit the circumstances must be inconsistent with innocence and must exclude every reasonable hypothesis except that of guilt. We think the correct rule is given in *S. v. Simmons*, 240 N.C. 780, 83 S.E. 2d 904, quoting from *S. v. Johnson*, 199 N.C. 429, 154 S.E. 730: 'If there be any evidence tending to prove the fact in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury.' The above is another way of saying there must be substantial evidence of all material elements of the offense to withstand the motion to dismiss. It is immaterial whether the substantial evidence is circumstantial or direct, or both. To hold that the court must grant a motion to dismiss unless, in the opinion of the court, the evidence excludes every reasonable hypothesis of innocence would in effect constitute the presiding judge the trier of the facts. Substantial evidence of guilt is required before the court can send the case to the jury. Proof of guilt beyond a reasonable doubt is required before the jury can convict. What is substantial evidence is a question of law for the court. What that evidence proves or fails to prove is a question of fact for the jury."

The question here, then, is whether there is any substantial evidence that defendants were the perpetrators of the alleged crimes. Since the quantum of evidence differs as to each of them, we shall discuss each separately.

[1] The evidence against defendant Rose was that he was seen around 2:30 a.m. "fumbling" with the door knob of the office at the Howard Johnson's Motel. When he discovered he had been

seen, he turned and ran away. Within an hour after he was first seen, it was discovered that doors to two of the rooms at the motel were standing ajar and, subsequently, that one of them had been burglarized. At about 6:15 a.m. Rose was seen again leaving the motel in defendant Lyles' car. When the person who saw him then looked back Rose was down out of sight. A later search of the car uncovered a motel master key behind the "kick panel" on the passenger side. When tested, the key opened the door of the room that had been burglarized. That door showed no signs of forced entry. The occupant of the room testified that he had locked it before going to bed.

Viewing this evidence in the light most favorable to the state, it establishes that Rose was on the premises shortly before the crimes were discovered. His behavior was suspicious. He twice attempted to avoid being seen by motel personnel, once when he was discovered fumbling with the door knob to the motel office itself. It is reasonable to infer from these circumstances and from his presence on the passenger side of defendant Lyles' car that he was in possession of the motel master key found there. A reasonable inference also arises that this key was used to gain entry to the burglarized room, since there were no signs of entry being forced.

Taking all these circumstances into account, we hold there was sufficient evidence for the charges of first degree burglary and felonious larceny against defendant Rose to go to the jury. We find support for our holding in *State v. Lakey*, 270 N.C. 786, 154 S.E. 2d 900 (1967). The evidence in *Lakey* showed that the Farmers Exchange building in Pittsboro had been broken into and that an attempt had been made to rob the safe. The question there, as here, was whether the defendant was the perpetrator of the crime. A Mr. Sam Polston, who lived in the neighborhood, had heard banging and knocking noises coming from the Farmers Exchange building and called the police. A police officer arrived about 3:50 a.m. Shortly thereafter he saw one Douglas Brady running from the vicinity of the building. About the same time Polston saw the defendant come running across the Farmers Exchange yard. Later that morning the defendant's car was found parked three miles by road and one mile by railroad tracks from the Farmers Exchange building. Fingerprints of Douglas Brady were in the car.

While there are some variations, the evidence against defendant Rose is similar to and at least as compelling as that in *Lakey*. The trial court did not err in denying the motion to dismiss as to Rose.

[2]  The state's evidence first placed defendant Lyles on the motel premises about 6:15 a.m. on 24 February 1977. His car was seen parked near the laundry room by Matta. Shortly thereafter, Matta saw Lyles and Rose leaving the motel in the car. Lyles was the driver. According to Matta, "the car did not speed in any fashion but got on 158 headed toward Roanoke Rapids." That afternoon the search of Lyles' car revealed the master key.

Viewing this evidence in the light most favorable to the state, it shows that Lyles' car was found parked at 6:15 a.m. in an area where cars are not usually parked. Otherwise his actions were not such as to excite suspicion in and of themselves. In essence the case against him consists of (1) his being seen with defendant Rose near the scene of the crime some three hours after the crime was discovered and (2) his constructive possession of the motel master key found in his car. While as noted above there is a reasonable inference that the key was used to gain entry to Coletrain's room, there is a serious question as to whether the evidence gives rise to an inference that defendant Lyles was on the scene to so use it.

In this respect the case against defendant Lyles is much like *State v. Burton*, 272 N.C. 687, 158 S.E. 2d 883 (1968). In *Burton* the General Electric Supply Company had been broken into, the safe opened, and $300 stolen. The only evidence against the defendants was a crowbar found in their possession some three days later. This crowbar was identified by scientific tests as having been used in the break-in. This Court held that the defendants' motion for nonsuit should have been granted, stating *id.* at 691, 158 S.E. 2d at 887:

"In the instant case the State fails to place defendants at or near the scene of the crime on the date the crime was committed; fails to show any of the 'fruits of the crime' in the possession of either defendant, and relies solely upon possession of a crowbar used by someone in the commission of the crime to show 'substantial evidence of all material elements of the offense.' True, the evidence is sufficient to put the in-

strument used at the scene of the crime, but whether one of the defendants, or both of the defendants, or either of the defendants was the person or persons who on or about 17 January 1967 'unlawfully and wilfully and feloniously did, by the use of a crowbar and other tools force open a safe of General Electric Supply Company, 18 Seaboard Ave., Raleigh, N. C., used for storing chattels, money and other valuables,' remains in the realm of speculation and conjecture."

So it is here with defendant Lyles. Even assuming the key was the instrument used to enter Coletrain's room, the state's evidence does not place defendant Lyles anywhere near the scene of the crime until some three hours after it must have been committed. The state's evidence includes positive testimony by Officer Whitton that Lyles' car was not on the motel lot during the night. No fruits of the crime were found on Lyles' person or in his car. Admittedly, suspicion as to his guilt has some basis, but it rests on speculation rather than reasonable inferences arising from the evidence. The trial court erred in denying the motion to dismiss as to defendant Lyles.

[3] Defendant Rose also contends that the trial court erred in allowing the trials in these cases to be consolidated despite defendants' motions for separate trials. "Ordinarily, unless it is shown that irreparable prejudice will result therefrom, consolidation for trial rather than multiple individual trials is appropriate when two or more persons are indicted for the same criminal offense(s)." *State v. Jones*, 280 N.C. 322, 333, 185 S.E. 2d 858, 865 (1972); *see* G.S. 15A-926(b). Defendant Rose argues that there was prejudice here because if the trials had not been consolidated, the key found in Lyles' car would not have been admissible against him. This argument is without merit. The key was clearly admissible against Rose. *See State v. Gatling*, 5 N.C. App. 536, 169 S.E. 2d 60, *aff'd* 275 N.C. 625, 170 S.E. 2d 593 (1969) (watch found in car some 48 hours after defendants were in it held admissible). This assignment of error is overruled.

[4] Defendant Rose next assigns as error the trial court's failure to instruct the jury properly as to evidence ordered stricken from the record. The following exchange took place during the direct examination of E. L. Johnson:

"Q. Is there any doubt in your mind that David Rose was the person you saw the night fumbling at the door at 2:30 in the morning?

MR. CREW: Object.

A. No, sir.

MR. CREW: Motion to strike.

THE COURT: Motion to strike is allowed.

EXCEPTION NO. 6"

Defendant argues that the trial court committed prejudicial error by not immediately instructing the jury to disregard the answer. We do not agree. In *Moore v. Insurance Co.*, 266 N.C. 440, 146 S.E. 2d 492 (1966), the trial court allowed a motion to strike but failed to instruct the jury accordingly. This Court found no prejudicial error, stating, *id.* at 450, 146 S.E. 2d at 500:

> "Although the proper procedure, upon allowing a motion to strike an answer not responsive to the question, is for the court immediately to instruct the jury not to consider the answer, we think that the failure to do so in this instance, in view of the court's prompt allowance of the motion to strike, is not prejudicial error. The jury could only have interpreted the ruling of the court as meaning that the answer given by the witness was not to be regarded as evidence in the case."

The same reasoning applies here. We note, moreover, that Johnson had already positively identified Rose as the person he saw. Given that fact, his reiteration of his identification in the manner described could not have prejudiced defendant so as to raise a "reasonable possibility that, had the error in question not been committed, a different result would have been reached." G.S. 15A-1443. This assignment of error is overruled.

[5] The trial court likewise did not err to defendant's prejudice in admitting certain testimony by the witness Matta. Matta identified the key found in Lyles' car as a motel master key. He also testified that he had been told by one Percy Gilliard, a yard man at Howard Johnson's, that Gilliard had lost his master key. This latter statement was admitted for corroborative purposes with accompanying instructions by the trial court, although no objection

to it or request for instructions by defendant appears in the record. Gilliard never testified; thus, there was nothing for the supposedly corroborative testimony to corroborate. It was, therefore, inadmissible. *State v. Taylor*, 280 N.C. 273, 185 S.E. 2d 677 (1972).

Assuming it was error for the trial court not to order the testimony stricken once it became apparent Gilliard would not testify, we see no prejudice to defendant in its failure to do so. The essential thrust of Matta's testimony was that the key was a motel master key which would unlock the room that had been burglarized. That it might have been lost by Gilliard or someone else added nothing to the state's case. This assignment of error is overruled.

[6] Defendant Rose next assigns as error the trial court's denial of the motion to suppress the items seized from Lyles' car. We have already held that these items were admissible against Rose. He has no standing to object to the search of Lyles' car and their seizure therefrom. *State v. Curry*, 288 N.C. 660, 220 S.E. 2d 545 (1975). This assignment of error is overruled.

[7] Defendant Rose's final assignment of error relates to the trial court's charge on "acting in concert." His objection is not to the content of the charge. It is, rather, to the court's bringing the jury back into the courtroom fifteen minutes after they retired and informing them that the state had requested the instruction. Defendant argues that this encouraged the jury to give undue emphasis to this instruction. We do not agree. At the close of this additional instruction the trial court stated: "Again I remind you of the instructions I gave to you earlier and I am not going to repeat those, but you in your deliberations, of course, must consider all of the instructions that have been given to you by the Court." This clearly conveyed to the jury their duty to give equal weight to all the instructions. This assignment of error is overruled.

We need not discuss the remaining exceptions brought forward as they could have had a prejudicial effect only as to defendant Lyles.

Reversed as to defendant Douglas Arthur Lyles.

No error as to defendant David Jonathan Rose.

Justice BROCK did not participate in the consideration or decision of this case.

Justice HUSKINS dissenting as to defendant Lyles.

I respectfully dissent from that portion of the majority opinion which holds that the trial court erred in denying the motion to dismiss as to defendant Lyles. The State's evidence places defendant Rose on the motel premises fumbling with the knob on the office door around 2:30 a.m. on the morning of 24 February 1977. Defendant Lyles was first *seen* on the motel premises about 6:15 a.m. that same morning in his blue-green station wagon parked near the laundry room. Lyles and Rose left in the vehicle with Lyles driving and Rose attempting to conceal himself. A master motel key was missing and a later search of the Lyles station wagon uncovered a master motel key behind the "kick panel" which, when tested, opened the doors of the motel rooms, including the rooms that had been burglarized. The doors showed no signs of forced entry and the occupants testified they had locked the doors before going to bed. The Lyles vehicle also contained a bedspread like the bedspreads used in the Howard Johnson motel rooms. Such a bedspread was missing after the burglary.

The fact that Lyles and his station wagon were not *discovered* on the premises until after the burglary does not require dismissal of the charges against him. Lyles was discovered driving Rose away from the premises in a vehicle registered in Lyles' name. This circumstance together with the subsequent discovery of the master key and the bedspread in Lyles' car, unexplained, gives rise to a permissible inference that the burglary was a joint venture — Rose serving as Mr. Inside and Lyles as Mr. Outside. These facts support the further inference that while the burglary was being committed by Rose, Lyles was nearby, to the knowledge of Rose, ready to furnish the means of escape. "It is settled law that all who are present (either actually or constructively) at the place of a crime and are either aiding, abetting, assisting, or advising in its commission, or are present for such purpose, to the knowledge of the actual perpetrator, are principals and are equally guilty." *State v. Holland*, 234 N.C. 354, 67 S.E. 2d 272 (1951).

In my view, when considered in the light most favorable to the State, the evidence is sufficient to carry the case to the jury and support a verdict of guilty as to Lyles as an aider and abettor, and thus equally guilty as a principal. I vote to uphold the convictions of both defendants.

Justice CARLTON joins in this dissenting opinion.