STATE OF NORTH CAROLINA v. JIMMY OTHA STOCKS

No. 543A86

(Filed 5 May 1987)

1. **Homicide § 21.5— first degree murder—evidence of premeditation and deliberation—sufficient**

   The trial court did not err by failing to dismiss a charge of first degree murder for insufficient evidence of premeditation and deliberation where the evidence showed that defendant invited the victim and two other men to his trailer in the early morning hours to talk and drink liquor; defendant had not seen the victim for some time but had lived with him in Atlanta sixteen years earlier and had learned that the victim became violent when he drank; after a time defendant and the victim began to argue over which of them had the better dog; the victim threatened to kill both defendant and his dog; the victim had no weapon when he made that statement; the victim tried to poke defendant in the eyes and picked defendant up and slammed him down on the stove; defendant went to the bathroom and on his way back looked behind his recliner for his axe handle but found his shotgun instead; according to defendant he picked up the shotgun thinking the victim would leave on seeing the gun; defendant told the victim to get out or to go for a gun on the kitchen table; the victim went for the gun; two other men grabbed the victim's arm and held it until a second before the shot, when it was released in anticipation of the shot; defendant shot the victim at a range of about six feet; and defendant testified that he believed the victim would have killed him had he not shot first.

2. **Criminal Law § 128.1— first degree murder—defendant ill—no mistrial**

   The trial court did not abuse its discretion in a first degree murder prosecution by denying defendant's motion for a mistrial where defendant testified that he knew he was sick during jury selection; he did not communicate this to the court until after the jury was empaneled and the State had rested its case; the trial was recessed when the court learned of defendant's illness to allow him to rest and recuperate; and, prior to the resumption of cross-examination, defendant took the stand and indicated that he felt fine and was ready to proceed.

3. **Criminal Law § 111— first degree murder—written instruction on self-defense—no error**

   The trial judge did not err in a prosecution for first degree murder by giving the jury written instructions on self-defense where the jury foreman

asked after several hours of deliberation if the jury could have a written copy of the description of the verdict; the court refused to give written instructions, but read a description of the possible verdicts and the law on self-defense; in response to complaints that the jurors were taking notes during the additional instructions, the court also gave the jury written instructions on the issue of self-defense; defendant objected to the wording of the written charge, but not to the procedure and did not ask that other parts of the written instructions be provided to the jury; the charge was favorable to defendant's case; and the trial court twice admonished the jury to take the additional instructions in conjunction with those it had previously given.

Justice MARTIN concurring.

APPEAL by defendant pursuant to N.C.G.S. 7A-27(a) from a judgment imposing a life sentence entered by *Brannon, J.*, at the 28 April 1986 Regular Criminal Session of Superior Court, WAKE County. Heard in the Supreme Court 14 April 1987.

*Lacy H. Thornburg, Attorney General, by Ellen B. Scouten, Assistant Attorney General, and William N. Farrell, Jr., Special Deputy Attorney General, for the State.*

*C. D. Heidgerd for defendant-appellant.*

WHICHARD, Justice.

Defendant was convicted of first degree murder and sentenced to life imprisonment. Evidence pertinent to the arguments presented is set forth *infra*. We find no error.

[1] Defendant contends the trial court erred in failing to dismiss the first degree murder charge, at the close of the State's evidence and all of the evidence, for insufficient evidence of premeditation and deliberation. A motion to dismiss for insufficiency of the evidence is tantamount to a motion for nonsuit under N.C.G.S. 15-173. *State v. Greer*, 308 N.C. 515, 519, 302 S.E. 2d 774, 777 (1983). Under N.C.G.S. 15-173, a defendant who introduces evidence waives any motion for dismissal or nonsuit made prior to the introduction of his evidence and cannot urge the prior motion as ground for appeal. N.C.G.S. 15-173 (1983); *State v. Bruce*, 315 N.C. 273, 280, 337 S.E. 2d 510, 515 (1985); *see also* N.C.R. App. P. 10(b)(3). Because defendant offered evidence following denial of his motion to dismiss at the close of the State's evidence, the denial of that motion is not properly before us for review. *Id.*

Defendant did not renew the motion to dismiss at the close of all the evidence. N.C.G.S. 15A-1446(d)(5) provides that errors based upon insufficiency of the evidence may be the subject of appellate review even though no objection, exception or motion has been made in the trial division. N.C.R. App. P. 10(b)(3), however, provides that a defendant "may not assign as error the insufficiency of the evidence to prove the crime charged unless he moves to dismiss the action, or for judgment as in case of nonsuit, at trial." To the extent that N.C.G.S. 15A-1446(d)(5) is inconsistent with N.C.R. App. P. 10(b)(3), the statute must fail. *State v. Bennett*, 308 N.C. 530, 535, 302 S.E. 2d 786, 790 (1983); *State v. Elam*, 302 N.C. 157, 160-61, 273 S.E. 2d 661, 664 (1981). While we thus are not compelled to do so, we have nevertheless reviewed the evidence in our discretion, *State v. Fikes*, 270 N.C. 780, 781, 155 S.E. 2d 277, 278 (1967), and we conclude that it sufficed to take the case to the jury.

On a motion to dismiss the trial court must view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from it. *State v. Williams*, 319 N.C. 73, 79, 352 S.E. 2d 428, 432 (1987) (quoting *State v. Young*, 312 N.C. 669, 680, 325 S.E. 2d 181, 188 (1985) ). If there is substantial evidence — whether direct, circumstantial, or both — to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied. *Id.*

This Court has said, with regard to premeditation and deliberation:

> Premeditation means that the act was thought out beforehand for some length of time, however short . . . . *State v. Myers*, 299 N.C. 671, 263 S.E. 2d 768 (1980). Deliberation means an intent to kill carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation. *State v. Bush*, 307 N.C. 152, 297 S.E. 2d 563 (1982). . . .

> Premeditation and deliberation relate to mental processes and ordinarily are not readily susceptible to proof by direct evidence. Instead, they usually must be proved by circum-

stantial evidence. *State v. Buchanan*, 287 N.C. 408, 215 S.E.
2d 80 (1975). Among other circumstances to be considered in
determining whether a killing was with premeditation and
deliberation are: (1) want of provocation on the part of the
deceased; (2) the conduct and statements of the defendant
before and after the killing; (3) threats and declarations of the
defendant before and during the course of the occurrence giv-
ing rise to the death of the deceased; (4) ill-will or previous
difficulty between the parties; (5) the dealing of lethal blows
after the deceased has been felled and rendered helpless; and
(6) evidence that the killing was done in a brutal manner.
[Citations omitted.] We have also held that the nature and
number of the victim's wounds is a circumstance from which
premeditation and deliberation can be inferred.

*State v. Williams*, 319 N.C. at 80, 352 S.E. 2d at 433 (quoting
*State v. Brown*, 315 N.C. 40, 58-59, 337 S.E. 2d 808, 822-23 (1985)).

The evidence at trial showed that defendant invited the vic-
tim and two other men to his trailer in the early morning hours of
11 May 1985 to talk and drink liquor. Defendant had not seen the
victim for some time but had lived with him in Atlanta sixteen
years earlier. Through their prior acquaintance defendant had
learned that the victim became violent when he drank.

After some time defendant and the victim began to argue
over which of them had the better dog. During the argument the
victim threatened that he would kill both defendant and his dog.
He had no weapon when he made that statement. The victim also
tried to "poke" defendant in the eyes and "picked [defendant] up
and slammed [him] down on the stove."

Immediately after this incident defendant went to the bath-
room. On his way back defendant looked behind his recliner for
his axe handle so he could "go up against [the victim's] hard
head," but he found his shotgun instead. According to defendant
he picked up the shotgun, not intending to kill the victim but
thinking the victim would leave on seeing the gun. As he came
into the kitchen with the shotgun, defendant said to the victim:
"Get the hell out, . . . [o]r you can go for that gun." Defendant
was referring to a pistol defendant had placed on the kitchen
table when he first entered his trailer. The victim went for the
pistol. The other two men grabbed his arm, and it was held until

"just a second before the shot" when it was released in anticipation of the shot. Defendant raised the shotgun and shot the victim at a range of about six feet. Defendant testified that he believed the victim would have killed him had he not shot first.

Viewed in the light most favorable to the State, as required, the foregoing evidence establishes that defendant returned from the bathroom after having time to think. By his own testimony he planned to hit the victim with an axe handle but later decided to shoot him, although not to kill him. Defendant clearly challenged the victim to a duel in which defendant had the upper hand and then proceeded to shoot him in the head at close range. The victim's arm was held by the other two men until "just a second before the shot" and was released only in anticipation of the shot. Although defendant testified that he was initially glad to see the victim after so many years, the jury could infer that defendant developed the intent to kill the victim as a result of the ill-will that arose during the argument over the dogs. The premeditation and deliberation issue thus was correctly submitted to the jury.

[2] Defendant next assigns as error the trial court's denial of his motion for mistrial. During cross-examination of the defendant he became nauseated and had to leave the court. He returned, however, and continued to testify until the lunch recess. At this recess defendant's attorney moved for a mistrial on the ground that defendant continued to feel ill. The court held a hearing and had the jail nurse take defendant's temperature, which was one degree above normal. The nurse also testified that defendant expressed symptoms of the flu. Although the court denied defendant's motion for mistrial, it recessed until the next day. The next day defendant indicated that he "[felt] fine and [was] ready to go forward." Defendant now contends that he did not receive a fair trial because his illness interfered with his ability to testify convincingly on the issue of self-defense.

Whether to grant a motion for mistrial is in the trial court's discretion. *State v. King*, 311 N.C. 603, 619, 320 S.E. 2d 1, 11 (1984). *See also State v. Calloway*, 305 N.C. 747, 754, 291 S.E. 2d 622, 627 (1982). Mistrial is a drastic remedy, warranted only for such serious improprieties as would make it impossible to attain a fair and impartial verdict. *Id.; State v. McCraw*, 300 N.C. 610, 620, 268 S.E. 2d 173, 179 (1980). Here defendant testified that he knew

he was sick during jury selection. He did not communicate this to the court, however, until after the jury was impaneled and the State had rested its case. When the court learned of defendant's illness, the trial was recessed to allow him to rest and recuperate. Prior to the resumption of cross-examination of the defendant, he took the stand and indicated that he felt fine and was ready to proceed. Clearly the court did not abuse its discretion in denying a mistrial under these circumstances. This assignment of error is thus overruled.

[3] Finally, defendant contends the court erred in submitting written instructions to the jury on the law of self-defense. After several hours of deliberation, the jury foreman inquired:

> We had some question—our memories are a little foggy from yesterday as to the descriptions of each of the verdicts and in an effort not to make a mistake, we were wondering if we could have a written copy of the legal descriptions of the verdicts.

While the trial court refused to give the jury written instructions, it did read a description of the possible verdicts and the law on self-defense. Although the foreman said that his questions were answered by the oral instructions, the court also gave the jury written instructions on the issue of self-defense in response to complaints that jurors were taking notes during the additional instructions.

Defendant now argues that the court erred in giving the jury written instructions on one issue without giving it written instructions on all issues. He contends that this procedure served to highlight the self-defense charge and may have confused the jurors as to other issues before them. Defendant did not object to this procedure at trial, however, and did not ask that other parts of the written instructions be provided to the jury. He merely objected to the wording of the written charge. We perceive no possible prejudice to defendant by a highlighting of the self-defense charge. *See* N.C.G.S. 15A-1443(a) (1983). The charge was favorable to his case. Further, the trial court twice admonished the jury to take the additional instructions in conjunction with those it had previously given. *See State v. Lyles*, 298 N.C. 179, 189, 257 S.E. 2d 410, 416 (1979). We thus find no merit in this assignment of error.

No error.

Justice MARTIN concurring.

I concur fully with the well-written opinion of Justice Whichard and write only to express my views with respect to the incident of the jurors taking notes of the trial judge's instructions. In response to a question by the jury, the trial judge read further instructions to the jury, after which counsel approached the bench. Both counsel objected to the jurors having taken notes during these instructions. Thereafter, the trial judge told the jurors to put away any notes they had made and that they should not refer to them during their deliberations.

The cause of this incident is N.C.G.S. § 15A-1228:

Jurors may make notes and take them into the jury room during their deliberations. Upon objection of any party, the judge must instruct the jurors that notes may not be taken.

Were the constitutionality of this statute before us, serious question would arise as to whether it is unconstitutional both as a violation of separation of powers and as an unconstitutional delegation to parties to litigation of the authority of the court to control the trial of cases.

The statute does not establish a rule of practice or procedure but purports to control how the trial judge should carry out his duty in the trial of cases. It is very much like a rule that court should open, recess, and close at definite times each day. The internal, day-to-day operation of the courts and trial of cases is best left to the judges, not the legislature.

Since 1874, this Court has held that it is proper, and often commendable, for jurors to make notes of the evidence. *Cowles v. Hayes*, 71 N.C. 230 (1874). In *State v. Shedd*, 274 N.C. 95, 161 S.E. 2d 477 (1968), we wrote that the general authority in the United States is that the making and use of trial notes by the jury is not misconduct but is proper, and may even be desirable. In *State v. Goldberg*, 261 N.C. 181, 134 S.E. 2d 334, *cert. denied*, 337 U.S. 978, 12 L.Ed. 2d 747 (1964), this Court approved the trial judge's giving note pads and pencils to the jury for note-taking. *See Juror Note Taking & Conduct*, 47 N.C.L. Rev. 511 (1969).

The above decisions of this Court clearly hold that the trial court has the power to control the taking of notes by the jury. The statute purports to delegate this authority to the parties in the case. Under the statute, if any party objects the jurors may not take notes even though the trial judge might think that they should, as in *Goldberg.* I find this delegation of control over the trial of cases to the parties (in practice, their counsel) may conflict with article IV, section 1 of the Constitution of North Carolina, which invests the judicial power of the state in the General Court of Justice. Parties to lawsuits are not a part of the General Court of Justice. Placing this authority in the hands of parties who are adverse to each other opens the door for counsel to exercise the authority for the benefit of their clients, not in the interest of justice. One party may want the jury to take notes while the other party is opposed to it. The statute clearly gives an unfair veto to the party opposing the taking of notes. Only the trial judge can properly resolve such issues. This power should reside solely in the trial judge, who is unbiased and neutral in the case.

Further, to demonstrate the ineptitude of the statute, what should the trial judge do if the jury has been taking notes and thereafter counsel objects? What should be done with the notes already taken? The statute says that the jurors may take their notes into the jury room during deliberations. The trial judge in this case did not allow the jurors to do so. The statute also creates an *unnecessary* dichotomy in the trial of civil and criminal cases as it only applies to criminal cases. The statute creates many questions but resolves none.