STATE OF NORTH CAROLINA
v.
IRENE ROSE McGRADY
No. COA07-1258
Court of Appeals of North Carolina
Filed July 15, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Anita LeVeaux, for the State.
Parish & Cooke, by James R. Parish, for Defendant.
STEPHENS, Judge.
In this case, Defendant was convicted by a jury of one count of first-degree sexual offense for placing her mouth on her three-year-old daughter's vagina. We conclude that Defendant received a fair trial, free of error.

FACTS
Defendant was indicted on two charges of first-degree sexual offense against her daughter, "Anne."[1] Prior to trial, Defendant filed a motion to suppress a statement she had signed on the grounds that the statement was not voluntarily given and was made in the absence of counsel or a waiver of counsel. Judge Dennis J. Winner denied the motion on 6 September 2006.
The trial began 4 January 2007, Judge Ronald K. Payne presiding. The State's first witness, Lieutenant Jerry Crisp of the Cherokee County Sheriff's office, testified that, on 15 September 2004, he received a report from the Department of Social Services ("DSS") that Defendant had inappropriately touched her daughter in June 2003. Lieutenant Crisp and DSS investigator Amy Peterson interviewed Defendant about the allegations that day, and Defendant denied the allegations. On 15 October 2004, Defendant went with Lieutenant Crisp and Ms. Peterson to Asheville, where Lieutenant Crisp conducted another interview. Regarding the second interview, Lieutenant Crisp testified:
A. I revisited talking to her about the allegations, and she was very cooperative and wanted to talk and gave me a statement and answered my questions.
Q. When she gave you that statement, did you write that statement down?
A. Yes.
Q. After you wrote that statement did you give [Defendant] an opportunity to read that statement?
A. Yes.
Q. Did you tell [Defendant] anything else in regards to that statement when she read over it?
A. I asked her if she agreed with that, if that's what she had told me. I asked her to sign the statement, and I also asked her to go through both pages and anywhere I had made a mistake, I had drawn a line through the mistake and I asked her to initial those.
Lieutenant Crisp testified that Defendant initialed and signed the statement. Lieutenant Crisp then read the statement:
A. . . . She started off by stating, "When I was eight years old my brother . . . was ten or eleven.["]
[DEFENSE COUNSEL]: Your Honor, I'm going to object to that as being irrelevant.
THE COURT: Overruled.
A. "He started touching my vagina. He would put his fingers inside me.["]
[DEFENSE COUNSEL]: Objection, Your Honor, to relevancy.
THE COURT: Overruled.
A. "He touched my breasts. He would put his mouth on my vagina."
[DEFENSE COUNSEL]: Objection as to relevancy.
THE COURT: Overruled.
A. "When I was thirteen he started raping me. He done this ["]
[DEFENSE COUNSEL]: Objection, Your Honor.
THE COURT: Overruled.
A. ". . . for about two years. I knew it was wrong, but it also felt good. I was playing with [my daughter] one day, and I had give her a bath. I was blowing on her belly. This was around the first part of June, 2003, on a Saturday night. I started at her chest and moved down her belly. I touched the top part of [my daughter's] vagina with my lips.["]
[DEFENSE COUNSEL]: Objection, Your Honor.
THE COURT: Overruled.
A. "As soon as I done it, I knew it was wrong, and I felt horrible. That's when I realized it was happening again. I knew it was wrong, but at the same time it felt good sexually."
[DEFENSE COUNSEL]: Objection, Your Honor.
THE COURT: Overruled.
[A]. "I knew I had to stop it so I dressed her and sent her with [my husband] to stay with his parents. I kissed her on the side of the vagina."
[DEFENSE COUNSEL]: Objection, Your Honor.
THE COURT: Overruled.
A. "I know it was wrong. I need some help so it never happens again. About a week or two later I done it again."
[DEFENSE COUNSEL]: Objection, Your Honor.
THE COURT: Overruled.
A. "I was blowing on her belly and it happened again. It was in her groin area with my mouth."
[DEFENSE COUNSEL]: Objection, Your Honor.
THE COURT: Is there a different objection to all of these?
[DEFENSE COUNSEL]: No, Your Honor. It would be
THE COURT: You don't need to keep making the objection. The objection is noted and the objection has been overruled. . . .
The statement was admitted in evidence. On cross-examination, Lieutenant Crisp testified that Defendant was arrested a month after he took her statement. Anne, six years old at the time of trial, next testified for the State as follows:
Q. Do you live with your mommy right now?
A. No.
Q. Why not?
A. Because of the things that she done to me was wrong.
Q. What did she do to you . . . ?
A. She eat my poopy and all that.
Q. When you say she ate your poopy, can you point to what part of your body that means? Is that what you call you[r] private parts?
A. Yes.
Q. You say she ate your poopy, does that mean the front part of your private parts or the back part?
A. The back part.
Q. The back part. Did she ever touch you on the front part?
A. Yes.
Q. When you say she ate it, what does that mean? What part of her body did she touch you with?
(SHE POINTED TO HER TONGUE)
Q. Did you also point to your fingers?
A. Yes.
Q. Where did she put those?
(POINTS)
Q. On your private part? You're going to have to answer out loud, okay?
A. Yes.
. . . .
Q. . . . [Y]ou said that she ate your poopy, is that where you go pee-pee from?
(NODS)
Q. You have to answer yes or no?
A. Yes.
Dr. Cynthia Brown, accepted by the court as an expert in pediatric medicine, next testified for the State. Dr. Brown testified that she had specialized in the area of child abuse cases for nine years and that she worked at a clinic for children "who are referred when there is a concern of possible physical abuse, sexual abuse[,] or neglect[.]" On 9 November 2004, when Anne was four-and-a-half years old, Ms. Peterson and Anne's grandmother brought Anne to see Dr. Brown at the clinic. Dr. Brown reviewed "paperwork" prepared by Ms. Peterson and interviewed Anne's grandmother. Next, through a two-way mirror, Dr. Brown observed another clinic employee interview Anne. During the interview, Anne said she "hated" her mother, but Anne would not explain why. Following the interview, Dr. Brown conducted a physical examination of Anne. Dr. Brown testified that Anne had a flat affect which raised a "concern for possible depression." Dr. Brown testified that Anne's exam was "normal[,]" that it is "very common . . . to see completely normal genital examinations in many cases of child sexual abuse[,]" and that "many clinics who evaluate children for possible sexual abuse have [physical] findings in about five percent of their cases, and that is my experience in my clinic as well." Anne did not tell Dr. Brown she had been abused. A clinical social worker who evaluated Anne in August 2005 testified that Anne "designated the name `bottom' for her genital area and `butt' for her buttock area." The social worker also testified that Anne said Defendant touched her on her bottom, "where she pees[.]"
Anne's aunt by marriage testified that in the spring of 2004, Anne told her Defendant "touched her in her privates with her hands and her mouth."
Mr. Duncan Sumpter, accepted by the court as an expert in the field of child counseling, was the State's final witness. Mr. Sumpter testified that he began seeing Anne in February 2004 and that he continued to meet with Anne on a regular basis. Mr. Sumpter testified that, during a session with Anne in September 2004, Anne said that her mother washed her privates with her mouth. During a session in November 2004, Anne told Mr. Sumpter she was angry at her mother "for eating her poopy." During a session in January 2005, Anne told Mr. Sumpter that she hated her mother because her mother would poke her breast and vagina with her finger. In testifying about other sessions with Anne, Mr. Sumpter generally stated that Anne's behaviors were consistent with a child who had been sexually abused. Anne repeated her allegations to Mr. Sumpter in other sessions.
At the close of the State's evidence, Defendant made a motion to dismiss the charges on the basis that the State presented insufficient evidence. The trial court denied the motion. Defendant took the stand in her defense. She testified that in June 2003 she had two children, Anne and a nine-month-old girl, and she was pregnant with a third girl who was born in October 2003. Defendant worked two jobs: from 5:00 p.m. until 3:00 a.m. at one job, then sometimes from 3:30 a.m. until 6:00 a.m. at another job. Defendant testified:
A. . . . The incident that's being spoke about, I was putting her lotion and her powder on her and chewing on her neck and blowing berries on her belly, and at the time I was putting lotion on her feet. She liked to have her feet rubbed. I went to go down to blow a berry on her belly, and she turned and I blew one on her hip.
Q. Did your lips or mouth touch her vaginal area?
A. It was on her hip.
Q. What about her groin?
A. A couple of weeks later, maybe. I don't know the exact time frame, you know, after her bath, putting lotion and powder on her, I was blowing berries on her belly and chewing on her neck, you know, stuff like that, and she arched her back and it wasn't specifically in her groin area. It was on her lower belly that I blew a raspberry.
Defendant acknowledged signing the statement, but testified that she did not read it before signing it and only signed it because she thought if she signed it she would "get [her] girls back[.]" She testified that she first read the statement after the charges were filed and that she was "horrified[]" by the statement's contents. She denied telling Lieutenant Crisp that she had abused her daughter and denied ever placing her mouth on Anne's vagina. Defendant also presented the testimony of her husband, her psychologist, and a DSS social worker who investigated the allegations. The social worker testified that DSS substantiated the allegations against Defendant. At the close of all the evidence, Defendant did not renew her motion to dismiss the charges.
The jury found Defendant guilty of committing a first-degree sexual offense by placing her mouth on Anne's vagina. The jury found Defendant not guilty of committing a first-degree sexual offense by placing her finger in Anne's vagina. The trial court sentenced Defendant to a minimum of 210 and a maximum of 261 months in prison. Defendant appeals.
Although Defendant assigned error to the trial court's denial of her motion to suppress the statement given to Lieutenant Crisp, Defendant did not bring this assignment of error forward in her brief to this Court. Thus, this assignment of error is deemed abandoned. N.C.R. App. P. 28(b)(6).
By her first assignment of error, Defendant argues that the trial court erred in denying her motion to dismiss the charges. Defendant acknowledges in her brief that her trial attorney made this motion at the close of the State's evidence, but did not renew the motion at the close of all the evidence. Accordingly, Defendant has waived appellate review of this issue. Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co., 362 N.C. 191, 657 S.E.2d 361 (2008); State v. Stocks, 319 N.C. 437, 355 S.E.2d 492 (1987); N.C.R. App. P. 10(b)(3). Defendant's first assignment of error is dismissed.
By her second assignment of error, Defendant argues that her trial counsel rendered ineffective assistance by failing to renew the motion to dismiss at the close of all the evidence. Defendant contends that there is a "reasonable probability" that, but for her attorney's failure to renew the motion, the result of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, reh'g denied, 467 U.S. 1267, 82 L. Ed. 2d 864 (1984). We disagree.
"To prevail on a claim of ineffective assistance of counsel, a defendant must first show that [her] counsel's performance was deficient and then that counsel's deficient performance prejudiced [her] defense." State v. Allen, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (citing Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693), cert. denied, ___ U.S. ___, 166 L. Ed. 2d 116 (2006).
When reviewing claims of sufficiency of the evidence, an appellate court must determine whether any evidence exists which tends to prove all material elements of the offense or reasonably leads to the conclusion of guilt as a fairly logical and legitimate deduction, viewing all the evidence in the light most favorable to the State and resolving all contradictions and discrepancies in the State's favor.
State v. Harris, 361 N.C. 400, 402, 646 S.E.2d 526, 528 (2007) (citing State v. Jones, 303 N.C. 500, 504-05, 279 S.E.2d 835, 838 (1981)). A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:
(1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim. . . .
N.C. Gen. Stat. § 14-27.4(a) (2003). "`Sexual act' means cunnilingus. . . ." N.C. Gen. Stat. § 14-27.1(4) (2003). "Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body. . . ." Id.
We hold that there is no reasonable probability that the result of the trial would have been different had Defendant's trial counsel renewed the motion to dismiss at the close of all the evidence. The State presented substantial evidence to take the case to the jury. Anne testified that Defendant put her tongue and fingers on Anne's "private part[,]" and three other witnesses corroborated this testimony. Also, the State introduced Defendant's statement in which she acknowledged twice touching her daughter's vagina with her lips. Although Defendant challenges the admission of part of the statement, infra, Defendant has not challenged the admission of that portion of the statement in which she acknowledged placing her lips on her daughter's vagina. We conclude that counsel's failure to renew the motion to dismiss at the close of all the evidence did not prejudice Defendant. Defendant's second assignment of error is overruled.
By her fourth assignment of error, Defendant argues that the trial court committed plain error by not intervening on its own motion when Lieutenant Crisp testified on re-direct examination that Defendant's statement was "freely" given. Under plain error review, "the burden is on the defendant to show that `absent the error the jury probably would have reached a different verdict.'" State v. Bellamy, 159 N.C. App. 143, 147, 582 S.E.2d 663, 667 (quoting State v. Hartman, 90 N.C. App. 379, 383, 368 S.E.2d 396, 398-99 (1988)), cert. denied, 357 N.C. 579, 589 S.E.2d 130 (2003). We agree with Defendant that the voluntariness of a confession is a question of law, State v. Bone, 354 N.C. 1, 550 S.E.2d 482 (2001), cert. denied, 535 U.S. 940, 152 L. Ed. 2d 231 (2002), and that a witness may not testify that a legal standard has or has not been met. State v. Rose, 323 N.C. 455, 373 S.E.2d 426 (1988). We disagree with Defendant, however, that the trial court's decision not to intervene amounts to plain error in this case. Lieutenant Crisp testified on direct examination that Defendant gave the statement "freely and voluntarily." Defendant did not object to this testimony at trial, nor has she challenged it on appeal. Thus, it cannot be said that, had the trial court intervened on re-direct examination, the jury probably would have reached a different verdict. This assignment of error is overruled.
By her sixth assignment of error, Defendant argues the trial court committed plain error in allowing Dr. Brown to testify that it "is very common . . . to see completely normal genital examinations in many cases of child sexual abuse[,]" and that "many clinics who evaluate children for possible sexual abuse have [physical] findings in about five percent" of cases. Again, we disagree.
Defendant cites two cases in support of this argument: State v. Stancil, 355 N.C. 266, 559 S.E.2d 788 (2002) (per curiam), and State v. Couser, 163 N.C. App. 727, 594 S.E.2d 420 (2004). In Stancil, the Supreme Court held that
[i]n a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has in fact occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility. State v. Trent, 320 N.C. 610, 359 S.E.2d 463 (1987); State v. Grover, 142 N.C. App. 411, 543 S.E.2d 179, aff'd per curiam, 354 N.C. 354, 553 S.E.2d 679 (2001).
Stancil, 355 N.C. at 266-67, 559 S.E.2d at 788. In Couser, this Court found plain error where an expert witness testified "that her diagnosis of the victim was probable sexual abuse." Couser, 163 N.C. App. at 729, 594 S.E.2d at 422. Because Dr. Brown did not testify that Anne had in fact been sexually abused or that her diagnosis was sexual abuse, Defendant's reliance on Stancil and Couser is unavailing. Neither case leads us to conclude that the trial court erred or plainly erred in the case at bar. Defendant's sixth assignment of error is overruled.
By her seventh assignment of error, Defendant argues the trial court committed prejudicial error in allowing Lieutenant Crisp to read those portions of her statement detailing her abuse at her brother's hands. Defendant argues that the only possible relevance of this evidence was to suggest Defendant's propensity or predisposition to abuse her daughter and, as such, was inadmissible pursuant to Rule 404 of the Rules of Evidence. N.C. Gen. Stat. § 8C-1, Rule 404 (2003). At trial, however, Defendant did not object to this evidence on the basis of Rule 404. Defendant only objected to the evidence "as being irrelevant."
[I]n the absence of a specific objection based on Rule 404, defendant has failed to preserve this matter for review. N.C.R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."); see State v. Thibodeaux, 352 N.C. 570, 577, 532 S.E.2d 797, 803 (2000) (declining to review an evidentiary assignment of error when defendant failed to enter a specific objection premised on the evidentiary rule purported to be violated), cert. denied, 531 U.S. 1155, 148 L. Ed. 2d 976 (2001).
State v. Garcia, 358 N.C. 382, 416, 597 S.E.2d 724, 748 (2004), cert. denied, 543 U.S. 1156, 161 L. Ed. 2d 122 (2005). Moreover, Defendant does not contend in her assignments of error or in her brief that the admission of the evidence amounts to plain error. Accordingly, Defendant is not entitled to plain error review of this issue. State v. Dennison, 359 N.C. 312, 608 S.E.2d 756 (2005). This assignment of error is dismissed.
NO ERROR.
Judges McGEE and TYSON concur.
Report per Rule 30(e).
NOTES
[1] We use the pseudonym, "Anne," in an effort to protect the child's privacy and for ease of reading.