STATE OF NORTH CAROLINA v. ROBERT HOLLAND GREER

No. 560PA82

(Filed 31 May 1983)

1. **Public Officers §§ 11, 11.1— removal of magistrate—indictment sufficient—statute not in irreconcilable conflict**

   The legislature did not intend to exempt magistrates from indictment and criminal prosecution under G.S. 14-230 when it included magistrates under the sanctions of G.S. 7A-173 and G.S. 7A-376.

2. **Public Officers § 11— magistrate unlawfully jailing person—sufficiency of evidence**

   There was substantial evidence that a person was confined in jail unlawfully by the defendant, a magistrate, where a jury could reasonably conclude that the person was jailed at the direction of the defendant and that the defendant was fully aware that the person remained confined without a charge ever being filed against him.

3. **Public Officers § 11— magistrate corruptly violating his oath—sufficiency of evidence**

   There was substantial evidence that the defendant, a magistrate, corruptly violated his oath by placing a person in jail without any charge and by keeping him there until he paid $200 where there was substantial evidence that the defendant intended to keep the man in jail until he paid $200 and that he intended to pay over part of that "bond" money to victims, and where defendant attempted to avoid any written record which might indicate that he had done something wrong.

ON the State's petition for discretionary review of the decision of the Court of Appeals, 58 N.C. App. 703, 294 S.E. 2d 745 (1982) (opinion by *Judge Wells*, with *Judge Robert Martin* concurring in the opinion and *Judge Webb* concurring in the result) arresting and vacating the judgment of *Grist, J.*, entered 2 April 1981 in Superior Court, CALDWELL County.

The State presented evidence at trial tending to show that Mr. Ottie Carroll and his daughter, Ms. Rebecca Cox, were driving through Caldwell County in route to Blowing Rock, North Carolina when a bottle was thrown against the windshield of their car by a passing motorist. Mr. Carroll called the police who responded immediately and apprehended Mr. Larry Hafner who was identified by Mr. Carroll and Ms. Cox as the culprit. At the time Mr. Hafner was apprehended he was intoxicated, belligerent and uncooperative. Mr. Hafner testified that at the time of the incident he was "drunk as a cooter."

Mr. Hafner, Mr. Carroll and Ms. Cox accompanied the police to the Caldwell County Courthouse where the defendant, Mr. Greer, was the magistrate on duty. The defendant's attempt to interview Mr. Carroll and Ms. Cox was repeatedly interrupted by the belligerent actions of Mr. Hafner. As a result of this unruly behavior, the defendant ordered the attending officers to take Mr. Hafner out of his courtroom. Mr. Carroll testified that the defendant instructed the officers to lock up Mr. Hafner for contempt of court. Although neither attending officer could remember the defendant ordering that Mr. Hafner be put in jail for contempt, they both believed that the order was for contempt and the jail records so indicate. No charge was ever filed against Mr. Hafner for either the bottle throwing incident or his belligerent behavior in the magistrate's court.

Mr. Carroll testified that he repeatedly asked the defendant to issue a criminal warrant against Mr. Hafner but the defendant indicated that he would handle it his own way. Before leaving the defendant's office Mr. Carroll gave the defendant his daughter's telephone number and indicated that the amount of damage was one hundred and twenty-five dollars ($125.00).

At the time Mr. Hafner was jailed the officers filled out the jail card and the jail log in a manner consistent with a confinement for contempt although no contempt citation was ever issued by the defendant. The notation "No Bond" was entered on the jail card by the attending officers. Later that same day Larry Hafner's stepfather, Mr. James Moss, arrived at the magistrate's office for the purpose of posting bond for Mr. Hafner. At that time the defendant had gone off duty and had been replaced by Magistrate John Parlier. Magistrate Parlier testified that at the time Mr. Moss arrived to secure Mr. Hafner's release the jail log indicated that the bond was in the amount of two hundred dollars ($200.00) and was for contempt. However, the word "contempt" had a line through it prompting Magistrate Parlier to call the defendant in order to obtain the proper disposition. The defendant told Magistrate Parlier that Mr. Hafner was not being held for contempt and the two hundred dollars ($200.00) bond was the result of Mr. Hafner having damaged a windshield on a car. Magistrate Parlier released Mr. Hafner after receiving two hundred dollars ($200.00) from Mr. Moss. Although the receipt indicated that the money was a bond for contempt, Magistrate Parlier

treated the money differently from other bond money and gave the cash to the defendant.

After receiving the two hundred dollars ($200.00), the defendant called Mr. Carroll and Ms. Cox and told them he had one hundred and ninety-dollars ($190.00) for them to pick up. Ms. Cox testified that the defendant refused to send her a cashier's check because he did not want any record of the transaction since he handled the matter in an "underhanded" manner. As a result Mr. Carroll returned to Caldwell County where the defendant gave him one hundred and twenty-five dollars ($125.00) and said that the remaining sixty-five dollars ($65.00) was for court costs and if there was any left Mr. Carroll would get it. Mr. Carroll further testified that the defendant refused to take a receipt for the money because he had been advised that it was "hot." Before the defendant gave Mr. Carroll any money he asked Carroll to write a letter to his superior indicating what a fine job he had done in handling the matter.

The defendant presented evidence directly and through cross-examination of the State's witnesses tending to show that Ms. Cox was very afraid of Mr. Hafner and his friends and did not want her address to appear on the arrest warrant. The defendant testified that Mr. Carroll was not interested in having a warrant issued against Mr. Hafner but that he did want to receive a cash payment to settle the entire matter.

The defendant testified that Mr. Hafner was sent from his courtroom because of his behavior but that he never ordered him jailed for contempt of court. Officer Kirby stated that she changed the disposition on the jail card from "contempt" to "hold till sober" at the direction of the defendant the day after Mr. Hafner was released from jail.

The defendant further testified that he told Magistrate Parlier that Mr. Hafner was being held until he became sober and that the two hundred dollars ($200.00) was for a windshield Mr. Hafner damaged. The defendant stated that the men with Hafner at the time of the incident agreed to get the money to pay for the windshield and that he had awaited their return until he went off duty. He testified that he handled the Hafner incident in an informal capacity and all parties were satisfied until he refused to give Mr. Carroll the entire one hundred and ninety dollars ($190.00),

the balance of the two hundred dollars ($200.00) after deducting jail fees. The defendant stated that he always intended to return the remaining sixty-five dollars ($65.00) to Mr. Hafner, that he unsuccessfully attempted to find Hafner and that he still had the sixty-five dollars ($65.00) in an envelope in his desk.

At the close of all the evidence the jury found the defendant guilty of corrupt practices in violation of G.S. 14-230 and Judge Grist removed him from his office as Magistrate for Caldwell County. The Court of Appeals arrested and vacated the judgment of Judge Grist. We allowed the State's petition for discretionary review 11 January 1983.

Additional facts pertinent to the disposition of this case will be provided within the opinion.

*Rufus L. Edmisten, Attorney General, by Assistant Attorney General Christopher P. Brewer, for the State-appellant.*

*Chambers, Ferguson, Watt, Wallas, Adkins & Fuller, P.A., by James E. Ferguson, II, for the defendant-appellee.*

COPELAND, Justice.

In its first argument the State asserts that the majority opinion of the Court of Appeals was in error by holding that G.S. 14-230, so far as it applies to magistrates, was repealed by implication through the enactment of G.S. 7A-173 and G.S. 7A-376. In this State "repeal by implication" is not a favored rule of statutory construction. *Commissioner of Insurance v. Automobile Rate Office*, 294 N.C. 60, 241 S.E. 2d 324 (1978). However, if two statutes are truly irreconcilably in conflict it is logical that the later statute should control, resulting in a repeal of the earlier statute. In the case *sub judice* G.S. 7A-173 and G.S. 7A-376 are not irreconcilably in conflict with G.S. 14-230.

In *State v. Hockaday*, 265 N.C. 688, 144 S.E. 2d 867 (1965) this Court held that the legislature's decision to bring justices of the peace within the scope of a removal from office statute did not exempt them from indictment and prosecution under G.S. 14-230. We find that the reasoning in *Hockaday* controls the first issue in this case.

[1] G.S. 7A-173 and G.S. 7A-376 fall within Chapter 7A titled, "Judicial Department" and provide for the censure, suspension or

removal of those magistrates who are guilty of misconduct in office. On the other hand, G.S. 14-230 falls within Chaper 14 which is titled "Criminal Law" and provides for criminal punishment for misconduct in office. As Justice (later Chief Justice) Bobbitt pointed out in *State v. Hockaday*, 265 N.C. 688, 144 S.E. 2d 867 (1965), G.S. 14-230 applies to misconduct in office unless another statute provides for the "indictment" of the officer. Neither G.S. 7A-173 nor G.S. 7A-376 provide for criminal charges to be brought against a magistrate who is guilty of misconduct in office. As a result, we do not find that the legislature intended to exempt magistrates from indictment and criminal prosecution under G.S. 14-230 when it included magistrates under the sanctions of G.S. 7A-173 and G.S. 7A-376. The Court of Appeals' opinion holding that G.S. 14-230 was repealed by implication is therefore in error.

As a result of this decision we must address the question of whether there was sufficient evidence to warrant submitting this case to the jury and to sustain the jury's verdict of guilty. The defendant's motion to dismiss for insufficiency of the evidence is tantamount to a motion for nonsuit. *State v. Cooper*, 275 N.C. 283, 167 S.E. 2d 266 (1969). Such a motion "in a criminal case requires a consideration of the evidence in the light most favorable to the State, and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom." *State v. Thomas*, 296 N.C. 236, 244, 250 S.E. 2d 204, 208 (1978). See also: *State v. Williams*, 307 N.C. 452, 298 S.E. 2d 372 (1983). Viewing the evidence in the light most favorable to the State, the trial court must determine whether there is "substantial evidence" to support each element of the offense. *State v. Evans*, 279 N.C. 447, 183 S.E. 2d 540 (1971). "*Substantial evidence* is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78, 265 S.E. 2d 164, 169 (1980). (Emphasis added.) We have reviewed the record in this case and find that there was substantial evidence of each element of the offense from which the jury could reasonably find this defendant guilty of corruptly violating his oath of office.

[2] In his brief the defendant contends that there was not substantial evidence to support two key elements of the State's case: (1) that the defendant unlawfully placed Larry Hafner in jail for contempt of court and (2) that the defendant's actions were a willful and corrupt attempt to extort two hundred dollars

($200.00) from Mr. Hafner. We disagree with the defendant and address each contention separately. First, under the indictment in this case all the State had to show was that the defendant placed Mr. Hafner in jail in order to extort and collect from him two hundred dollars ($200.00). Although the record indicates that the defendant would have been justified in jailing Mr. Hafner on a contempt charge, it is undisputed that Mr. Hafner was jailed without ever being charged with any crime. The State's evidence also indicates that at the time Mr. Hafner's stepfather arrived to post bond the defendant knew he had not jailed Hafner for contempt but instead was holding him for two hundred dollars ($200.00) for a windshield that had been damaged. It is also undisputed that the defendant instructed one of the attending officers to change the disposition of Mr. Hafner's confinement from "contempt" to "hold till sober" after Mr. Hafner paid two hundred dollars ($200.00) in order to secure his release. Considering these facts in the light most favorable to the State, a jury could reasonably conclude that Mr. Hafner was jailed at the direction of the defendant and that the defendant was fully aware that Mr. Hafner remained confined without a charge ever being filed against him. Therefore, there was substantial evidence that Mr. Hafner was confined in jail unlawfully by the defendant.

[3] Secondly, the State presented evidence that the defendant refused to issue a criminal warrant against Mr. Hafner and said he "would handle it his way." Rebecca Carroll Cox, one of the victims, testified that the defendant called her the next day (Sunday) on the phone and told her she could come and get the money for her broken windshield. When Ms. Cox requested that the defendant send her a cashier's check he said, "No, I don't wany any records of it because I handled it in an *underhanded way*." Ms. Cox's father, Mr. Ottie Carroll, testified that he returned to Caldwell County to pick up the money for the damaged windshield and that prior to receiving any money the defendant asked him to write his superior (Senior Resident Superior Court Judge Forrest Ferrell) a letter commending the defendant on the fine way the entire matter was handled. Mr. Carroll also stated that the defendant gave him one hundred and twenty-five dollars ($125.00) and said the rest was to cover court costs. The evidence shows that no charge was ever filed, so no court costs would have been owed. Mr. Carroll testified further that the defendant

refused a receipt for the money paid to Mr. Carroll because he didn't want any receipt in this case and because the money was "hot" and he wanted to be careful. It is uncontradicted that Larry Hafner was not released from jail until he posted what he thought was a two hundred dollars ($200.00) bond. There is sufficient evidence from which a reasonable mind could conclude that the defendant intended to keep Larry Hafner in jail until he paid two hundred dollars ($200.00) and that he intended to pay over part of that "bond" money to Mr. Carroll and Ms. Cox. There is also substantial evidence that the defendant attempted to avoid any written record which might indicate that he had done something wrong. As a result we hold that there was substantial evidence that the defendant corruptly violated his oath by placing Mr. Hafner in jail without any charge and by keeping him there until he paid two hundred dollars ($200.00).

We wish to point out that even if the defendant was attempting to reach a fair settlement between the victims and Mr. Hafner, he did so without the consent of either party. Mr. Hafner was clearly an unwilling participant in the defendant's settlement scheme. Corruption is defined as, "The act of an official or fiduciary person who unlawfully and wrongfully uses his station or character to procure some benefit for himself or for another person, contrary to duty and the rights of others." Black's Law Dictionary, 311 (Rev. 5th Ed. 1979). The evidence in this case supports the conclusion that the defendant, contrary to the rights of Mr. Hafner and at least for the benefit of Mr. Carroll and Ms. Cox, wrongfully used the power of his office to confine Mr. Hafner and obtain from him two hundred dollars ($200.00) for which there was no legal obligation.

We reverse and vacate the opinion of the Court of Appeals and remand this case to that court for the reinstatement of the trial court's judgment.

Reversed and remanded.