IN RE COUSIN

[93 N.C. App. 224 (1989)]

_____

IN THE MATTER OF: ISAAC ANTONIO COUSIN

No. 8815DC978

(Filed 21 March 1989)

1. **Infants § 18— adjudication of delinquency—breaking or entering and larceny—sufficiency of evidence**

   Evidence was sufficient to sustain an adjudication of delinquency based on respondent's commission of breaking or entering and larceny, though the only evidence placing respondent at the crime scene was the uncorroborated testimony of an accomplice, where it tended to show that respondent and three others used a knife to open a window to an apartment and then entered without permission; they "started searching around"; and they removed a television set, watches, and a clock from the apartment.

**IN RE COUSIN**

[93 N.C. App. 224 (1989)]

**2. Infants § 20— juvenile delinquent—appropriateness of con-
finement—findings insufficient—consideration of dispositional
alternatives not shown**

The trial court erred in concluding that the confinement
of the delinquent respondent was appropriate where the court's
findings, which basically recounted the history of respondent's
delinquency, did not sufficiently address the needs of the
juvenile, such as medical or psychological evaluation, school
records, home evaluation, or a history of parental neglect,
nor did the findings suggest what community resources might
be appropriate as non-custodial alternatives to commitment.
N.C.G.S. §§ 7A-647, 7A-649.

APPEAL by respondent from *Washburn, Judge*. Orders entered
11 April 1988 and 9 May 1988 in ALAMANCE County District Court.
Heard in the Court of Appeals 13 March 1989.

This is an appeal by respondent from juvenile court orders
finding him to be delinquent and committing him to the custody
of the Division of Youth Services.

*Attorney General Lacy H. Thornburg, by Assistant Attorney
General Martha K. Walston, for the State.*

*Jacobs & Livesay, by Robert J. Jacobs, for respondent-appellant.*

WELLS, Judge.

On 11 April 1988, respondent, born 21 May 1972, was ad-
judicated delinquent for breaking and entering, in violation of N.C.
Gen. Stat. 14-54(a) (1986), and larceny, in violation of N.C. Gen.
Stat. 14-72(b)(2) (1986). On 9 May 1988, the trial court conducted
a dispositional hearing and ordered the commitment of defendant
into the custody of the Division of Youth Services for an indefinite
period. From adjudication and disposition orders, respondent
appealed.

[1] Respondent first contends that the evidence was insufficient
to sustain an adjudication of delinquency based on his commission
of breaking or entering and larceny. We disagree. The respondent
in a juvenile delinquent proceeding is entitled to have the evidence
evaluated by the same standards as apply to adult criminal pro-
ceedings; N.C. Gen. Stat. 7A-634(a) (1986). *In re Walker*, 83 N.C.
App. 46, 348 S.E. 2d 823 (1986). The standard of proof is whether

there is substantial evidence of each element of the offense and that respondent was the perpetrator. *Id.* Substantial evidence is that which a reasonable mind might accept as adequate. *State v. Greer*, 308 N.C. 515, 302 S.E. 2d 774 (1983). In addition, the evidence must be considered in the light most favorable to the State. *Id.*

The elements of felonious breaking or entering in violation of N.C. Gen. Stat. 14-54 (1986) are: (1) breaking or entering, (2) of any building, (3) with the intent to commit any felony or larceny therein. *State v. Litchford*, 78 N.C. App. 722, 338 S.E. 2d 575 (1986). Where a defendant offers no explanation for breaking into the building or a showing of the owner's consent, intent may be inferred from the circumstances. *State v. Myrick*, 306 N.C. 110, 291 S.E. 2d 577 (1982). In addition, the intent with which a defendant entered or broke and entered a dwelling may be inferred from what he did within the building. *State v. Bronson*, 10 N.C. App. 638, 179 S.E. 2d 823 (1971). The elements of larceny in violation of N.C. Gen. Stat. 14-72(b) (1986) are that the defendant: (1) took the property of another, (2) carried it away, (3) without the owner's consent, and (4) with the intent to deprive the owner of the property permanently. *State v. Reeves*, 62 N.C. App. 219, 302 S.E. 2d 658 (1983).

In the present case, the State's evidence tended to show that on 3 February 1988, Tony Griffis, Nathaniel Herbin, Maurice Leath, and respondent were together and went to an apartment occupied by Karen Bryson Hawkins which was located at 1406 Stout Street. Mr. Griffis testified that he did not have permission to enter the apartment. He further testified that Maurice Leath used a knife to open a window to the apartment and then entered. The young men entered the apartment and "started searching around." Mr. Griffis further testified that he grabbed a television set and that Maurice Leath started throwing eggs. Mr. Griffis also testified that Maurice Leath and respondent removed five watches and a digital clock from the apartment and took them to Maurice's house.

The State also presented the testimony of Lisa Morrow, Ms. Hawkins' next door neighbor. She testified that she called the police on 4 February 1988 because she had heard the house had been broken into and went into the apartment and observed eggs thrown on the wall, the contents of Ms. Hawkins' pocketbook piled on the kitchen floor, and her kitchen cabinets opened. Ms. Morrow

**IN RE COUSIN**

[93 N.C. App. 224 (1989)]

further testified that the back door was open and that the screen was out.

We find the foregoing evidence, considered in the light most favorable to the State, sufficient to establish the elements of breaking or entering and larceny and that the respondent was the perpetrator. Respondent argues that the evidence is insufficient to adjudicate him delinquent for breaking or entering and larceny because the only evidence placing him at 1406 Stout Street is the testimony of Tony Griffis. However, this Court has held that the unsupported testimony of an accomplice is sufficient to support a conviction if it satisfies the jury beyond a reasonable doubt of the guilt of the defendant. *State v. Bailey*, 18 N.C. App. 313, 196 S.E. 2d 556, *cert. denied*, 283 N.C. 754, 198 S.E. 2d 724 (1973), *cert. denied*, 415 U.S. 976 (1974). This assignment of error is overruled.

[2] Next, respondent contends that the trial court erred in concluding that the confinement of respondent was appropriate where less restrictive alternatives to commitment were available. Pursuant to N.C. Gen. Stat. 7A-646 (1986), the trial judge has the duty to choose the least restrictive alternative in selecting a disposition, taking into consideration the seriousness of the offense, age, prior record, degree of culpability, and the circumstances of the case. The trial judge must also consider the best interest of the State. *In re Bullabough*, 89 N.C. App. 171, 365 S.E. 2d 642 (1988). Prior to committing a juvenile to the Division of Youth Services, the trial judge must first find that the alternatives to commitment contained in N.C. Gen. Stat. 7A-649 (1986) are inappropriate *or* that they have been unsuccessfully attempted *and* that the juvenile's behavior is a threat to the community. *Id.* In addition, these findings must be supported by detailed findings which are in turn supported by some evidence in the record of the dispositional hearing. *In re Khork*, 71 N.C. App. 151, 321 S.E. 2d 487 (1984).

In the present case, the trial court made the following findings:

(2) The respondent was first before the court on July 12, 1984 for shoplifting of some candy and was placed on juvenile probation which he violated by failing to attend school on a regular basis.

(3) His probation was extended on February 11, 1985 for an additional six months.

(4) On May 10, 1985, his probation was extended for an additional twelve (12) months.

(5) On October 14, 1985 the respondent was adjudicated delinquent for discharging a firearm (a [sic] air-rifle) within the city limits for which the respondent was given a seven (7) months stayed committment [sic].

(6) One of the conditions of his stayed committment [sic], the respondent was placed in Lake Waccamaw and that he attend school on a regular basis upon his return.

(7) He did cooperate at Lake Waccamaw until November of 1986 at which time he returned home.

(8) On February 26, 1987, the respondent was adjudicated undisciplined for failure to attend school on a regular basis, the juvenile probation having expired on June 6, 1986.

(9) On September 21, 1987 the respondent was again adjudicated for operating a mini-bike upon a highway without the proper license and was again placed on juvenile probation for a period of twelve months on certain conditions including regular school attendance and cooperation with out-of-home placement if appropriate.

(10) The petition dated March 11, 1988 is one for which the respondent has been adjudicated in this case.

(11) The exceptional children's program has been used on behalf of the respondent as has out-patient theraphy [sic] from Children of Youth Services division of the Alamance-Caswell Area Mental Health Center and the Final-Step Program at Western Correctional Center has also been utilized.

(12) The court finds that while there are resources within the community that have not yet been attempted with the respondent in view of his failure to attend school as a chronic problem, the court finds that the available resources have either been tried in this case or would not be effective or appropriate.

(13) The court does find that the respondent's behavior does constitute a threat to the property of person's [sic] in the community.

The trial court's findings do not sufficiently address the needs of the juvenile, such as medical or psychological evaluation, school

records, home evaluation, or a history of parental neglect. *See* N.C. Gen. Stat. 7A-647 (1986). Neither does the order contain sufficient findings as to community resources that might be appropriate as non-custodial alternatives to commitment. *See* N.C. Gen. Stat. 7A-649 (1986); *Bullabough, supra.* Therefore, we cannot determine from the court's order what consideration the trial court gave to these pertinent factors affecting its dispositional conclusion. We therefore remand for a further order consistent with this opinion. If a further hearing is necessary in order for the trial court to properly resolve the issues we have noted, such a hearing should be conducted.

Affirmed in part, reversed and remanded in part.

Judges PARKER and GREENE concur.