The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At all relevant times herein, an employer-employee relationship existed between plaintiff and defendant-employer and St. Paul Travelers was the carrier on the risk.
 2. Plaintiff alleges an injury by accident on July 6, 2004. *Page 2 
3. At the time of the alleged injury, plaintiff's average weekly wage was $745.99, yielding a compensation rate of $497.35 per week.
4. Defendant-employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act. The Industrial Commission has jurisdiction over the parties and the subject matter of this case.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff's date of birth is June 1, 1953. He has an eleventh grade education. Plaintiff is 5 feet, 9 inches tall and weights 173 pounds. He began his employment with defendant-employer on August 30, 1999 as a maintenance technician. Except for an incident 25 years ago involving a pulled muscle, plaintiff has never sought medical treatment for his back.
2. Defendant-employer owns and operates high-rise buildings, including the 42-story Wachovia building located in Charlotte, North Carolina. Plaintiff's position as a maintenance technician covered the entire building with a focus of maintaining the air handlers, the large air conditioners and heating units in the Wachovia building.
3. Prior to the date of injury, plaintiff was off for three days for the 4th of July holiday. When he returned to work on Tuesday, July 6, 2004, he was pain free. Because of the extended weekend, plaintiff returned to a short work week during which he had an increased work load in order to catch up with the maintenance following the 4th of July holiday.
4. Upon plaintiff's return to work, he was required to repair and maintain multiple air handlers. This involved adjusting the belts inside the air handlers. To accomplish this, *Page 3 
plaintiff had to remove the door of each air handler weighing approximately 150 lbs., crouch and crawl inside of the air handler into a space that was 3½ to 4 feet high. While inside the air handler, plaintiff had to remain in a crouched position and adjust the belts inside the air handlers. The belts are adjusted by loosening a long nut with a ratchet wrench and placing both feet on the back of the unit and pushing against the motor while tightening the belts with both hands.
5. After plaintiff had worked on two or three handlers, he received a call on a radio that one of the air handlers had stopped working which required his immediate attention. Plaintiff went to the relevant floor and asked a co-worker, Ray Bradley, to help him. Because the motor had malfunctioned, plaintiff and Mr. Bradley were required to pick up the motor and lift it out of the unit. This was done by running a steel rod through eyelets located on the motor. Plaintiff went inside of the unit, and while crouching down, lifted his end of the motor, which weighed approximately 150 pounds. Plaintiff testified that his back had already been hurting from performing maintenance work on the previous air handlers and that once he got outside of this air handler it was difficult for him to stand due to pain in his back. Plaintiff continued to work for a few more hours until lunch, including pushing a 60-pound tool cart around in the building. By lunch, plaintiff's back was hurting worse and he was beginning to walk with a limp.
6. Ray Bradley, a master plumber in maintenance who has been employed by the defendant-employer for approximately 15 years, testified that he remembered plaintiff asking him to assist him in working on a motor in one of the air handlers on July 6, 2004. After helping plaintiff with the motor, Mr. Bradley did not see plaintiff again until around lunch, and at that time, Mr. Bradley observed that plaintiff appeared to be having pain in his back and in his leg. Mr. Bradley asked him at that time whether his back or leg was bothering him, and plaintiff *Page 4 
responded that he was experiencing some pain. Mr. Bradley testified that plaintiff never complained about pain before and that he was not the type of person to complain.
7. Plaintiff continued to work with the pain in his back and his leg. Plaintiff did not seek medical treatment and was able to continue to work for approximately three weeks after July 6, 2004. Plaintiff began experiencing numbness in his right leg and an increase in the sharpness of his back pain during the course of those three weeks. Plaintiff indicated that due to the nature of this job and the physical labor required, he experienced aches and pains. Plaintiff did not immediately report the back pain because he thought he could handle it. When he realized that it was more than a regular backache, he reported these problems to his supervisor, Gene Childers, and informed Mr. Childers that he was going to go to the doctor. Plaintiff did not inform Mr. Childers that his back pain was a result of the occurrences of July 6, 2004 because he did not know at that time what specifically happened on that day that lead to the back pain.
8. Mr. Bradley testified that Mr. Childers approached him shortly after plaintiff had notified Mr. Childers of his back pain and asked him if he knew anything about plaintiff's back pain and how it happened. Mr. Bradley informed Mr. Childers that he believed plaintiff hurt his back on July 6, 2004 after removing the motor in the air handler. In his affidavit, Mr. Childers denies that he was made aware of any injury of plaintiff until the filing of the Form 18 on September 17, 2004. Based upon the greater weight of the evidence, the Full Commission finds that plaintiff notified his supervisor of the injury approximately three weeks after the accident and that Mr. Bradley notified the supervisor that the injury occurred while plaintiff was working. Further, the greater weight of the evidence does not show that defendants were prejudiced by the delay in providing written notice. *Page 5 
9. Plaintiff presented to his family physician, Dr. Ron Rutledge, at Shiloh Family Practice on July 29, 2004. Plaintiff informed Dr. Rutledge that he did a lot of heavy work and lifting at the Wachovia building and gave a history of back and right leg pain that had been worsening for approximately three weeks. Dr. Rutledge noted that plaintiff was walking with a distinct limp and was in obvious pain. Dr. Rutledge took plaintiff out of work and referred him to Total Spine Specialists.
10. Plaintiff presented to Dr. Robert E. Lins at Total Spine Specialists on August 6, 2004. Dr. Lins initially diagnosed plaintiff with mild dextroscoliosis of the lumbar spine with significant disc space narrowing and osteophyte formation at the L3-4 level and L3-4 lumbar degenerative disc disease.
11. On August 11, 2004, an MRI of the lumbar spine without contrast was taken that showed plaintiff had a large herniated disk at L5-S1, which required surgery. On September 16, 2004, Dr. Lins performed a microdiskectomy.
12. On November 5, 2004, Dr. Lins noted that plaintiff was still complaining of numbness in his leg and burning post-surgery. Dr. Lins planned to obtain a lumbar MRI to rule out herniated nucleus pulposus and wrote plaintiff out of work for the following six weeks.
13. Plaintiff continued to treat with Dr. Lins and underwent epidural injections, which provided short-term relief. On December 15, 2005, plaintiff presented to neurosurgeon Dr. Michael Cowan. An MRI was taken which revealed a ruptured disk on the right at L5-S1, at the same site of Dr. Lins' surgery. Dr. Cowan opined that with every disk herniation, there is a 5 — 10% chance of recurrence of a rupture of the same disk.
14. On January 19, 2006, Dr. Cowan performed a second surgery on plaintiff's back, removing scar tissue from the previous surgery and noting "a significant disk herniation" which *Page 6 
was decompressed. Following the surgery, Dr. Cowan opined that plaintiff still had some instability, which may require a lumbar fusion in the future.
15. On April 4, 2006, Dr. Cowan gave plaintiff a permanent partial disability rating of 15%, based upon two surgeries without symptom improvement. When provided with a hypothetical consistent with the findings of fact above, Dr. Cowan opined that given the history, "it's very likely that the disk ruptured at or around the time of the injury or lifting." Dr. Cowan noted that a rupture such as that suffered by plaintiff typically develops symptoms right away. Therefore, the lack of symptoms prior to July 6, 2004 is indicative of either an exacerbation of a pre-existing asymptomatic condition on that date or an actual herniation occurring on that date.
16. Beginning on May 16, 2005, plaintiff received treatment from Dr. Ratko Vujicic at Interventional Pain Partners. Following the second surgery, Dr. Cowan recommended that plaintiff continue this treatment. Dr. Vujicic noted that plaintiff's primary condition was lumbosacral rediculitis, which he opined was related to the original L5-S1 surgery. Plaintiff also suffered from post laminectomy syndrome and sacroilitis, which Dr. Vujicic also related to the surgery. Dr. Vujicic has kept plaintiff out of work during his treatment, pending a functional capacity evaluation, which had not been performed as of the date of his last visit.
17. Dr. Vujicic noted that on a 1-10 scale, plaintiff's pain is around 7 to 8. He opined that plaintiff is close to maximum medical improvement, and plaintiff's condition will wax and wane in the future. He further opined that plaintiff would require continuing treatment for pain.
18. Plaintiff was seen on an emergency basis by Dr. Cowan on July 11, 2006. Plaintiff was suffering from severe significant lumbar pain as well as radiating pain down his right leg. Dr. Cowan ordered an MRI to be performed that day which revealed a large disk *Page 7 
protrusion at L5-S1. Dr. Cowan performed lumbar fusion surgery on July 18, 2006. Plaintiff continues to be written out of work by Dr. Cowan.
19. Dr. Samuel Seastrunk, an orthopaedic surgeon, performed an independent medical evaluation of plaintiff and also opined that plaintiff's job activities on July 6, 2004, caused the herniation at L5-S1.
20. Plaintiff suffered an injury by specific traumatic incident on July 6, 2004 while performing work arising out of and in the course of his employment with defendant-employer.
21. As a result of the work-related injury, plaintiff has been out of work since July 29, 2004, the date he was first written out of work by Dr. Rutledge, and continuing.
22. Plaintiff has not reached maximum medical improvement.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of an in the course of employment. N.C. Gen. Stat. § 97-2(6). The Act further provides that "where injury to the back arises out of and in the course of the employment and is the direct result of a specific traumatic incident of the work assigned, "injury by accident" shall be construed to include any disabling physical injury to the back arising out of and causally related to such incident." N.C. Gen. Stat. § 97-2(6). The plaintiff has the burden of proving a specific traumatic incident by showing that the injury did not develop gradually but must have occurred at a cognizable time, capable of being judicially known and determined.Livingston v. James C. Fields Co., 93 N.C. App. 226, 227 S.E.2d 788
(1989). On *Page 8 
July 6, 2004, plaintiff sustained an injury by specific traumatic incident arising out of and in the course of his employment with defendant-employer while performing maintenance work on multiple air handlers, including a specific air handler wherein he was required to lift a heavy motor while in a crouching position. As a result of his work on that date, plaintiff developed pain in his back with radiation down his right leg soon after. N.C. Gen. Stat. § 97-2(6).
2. N.C. Gen. Stat. § 97-22 provides that an injured employee shall give the employer written notice of the accident. Compensation to an injured employee is not payable unless the employee provides the written notice within 30 days after the occurrence of the accident, unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice and the Commission is satisfied the employer has not been prejudiced thereby. N.C. Gen. Stat. § 97-22. An employer is not prejudiced by a plaintiff's failure to provide written notice of an injury within 30 days when defendant had actual notice of plaintiff's injury. Sanders v. Broyhill furnitureIndustries, 131 N.C. App. 383, 507 S.E.2d 568 (1998).
3. In the case at hand, plaintiff provided a reasonable excuse for not giving written notice within thirty days as he did inform his supervisor of his back pain within thirty days and his supervisor was aware that it was related to his work. Further, defendants have failed to show that they were prejudiced by the lack of written notice within thirty days from the date of the incident as they had actual notice of plaintiff's injury. Sanders v. Broyhill Furniture Industries, 131 N.C. App. 383,507 S.E.2d 568 (1998).
4. As a result of his compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $497.35 per week for the period beginning July 29, 2004 and continuing until plaintiff returns to work or until further Order of the Commission. N.C. Gen. Stat. § 97-29. *Page 9 
5. Plaintiff is entitled to have defendant pay for medical expenses incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability, subject to the statute of limitations prescribed in N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay temporary total disability compensation to plaintiff at the rate of $497.35 per week for the period beginning July 29, 2004 and continuing. Portions of this compensation have accrued shall be paid in a lump sum.
2. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel. For future compensation, every fourth check shall be paid to plaintiff's counsel.
3. Defendants shall pay for all related medical expenses incurred by plaintiff as a result of his compensable injury by accident.
4. Defendants shall pay the costs.
This the 20th day of July 2007.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________________ BUCK LATTIMORE COMMISSIONER
 S/_____________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1